Gladys M. BROOKINS, Leroy Douglas, April C. Brookins and Lawrence H. Jett

v.

UNITED STATES of America, Vincent Primavera and James Primavera t/a Fireside Realty.

Civ. A. No. 85–7057.

United States District Court, E.D. Pennsylvania.

Sept. 29, 1989.

Marshall A. Bernstein, and Stuart R. Silver, Philadelphia, Pa., for plaintiffs.

David F. McComb, Asst. U.S. Atty. and Jeffrey L. Cohen, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiffs bring this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680,[1] to recover damages for personal injuries sustained as a result of a fire which occurred in an apartment owned by the Department of Housing and Urban Development (HUD) and managed by Fireside Realty (Fireside), a private realty firm. Plaintiffs allege that they were injured when a fire broke out at the Larchwood Gardens Apartments, a housing project located at 8111 Lyons Avenue in Philadelphia.

Before the court in this non-jury case is the motion of the defendant United States of America for summary judgment. There are no genuine issues of material fact and, for the reasons set forth below, the motion of the defendant will be granted.

## I

*Factual Background*

The relevant facts of this case are not in dispute. The property where plaintiffs were injured, a two-level apartment project consisting of fourteen buildings containing 180 units known as the Larchwood Garden Apartments, was acquired by HUD on November 3, 1982, following a mortgage foreclosure sale. In November, 1983, plaintiff Gladys Brookins entered into a leasehold agreement with HUD to lease an apartment in the Larchwood Gardens Project. At the time Gladys Brookins entered into the lease agreement, Interstate Realty was managing Larchwood Gardens. On or about December 1, 1983, Interstate Realty unilaterally discontinued its services as Project Manager to enable it to submit an offer to purchase the project.

In its search for a new Project Manager, three firms were invited to bid to become Property Manager for HUD at Larchwood Gardens. Fireside, whose sole proprietor was Vincent Primavera, was awarded the Project Management Contract on December 9, 1983.[2] As part of that contract, Fireside was to provide management services, collect rent and other income from the tenants of Larchwood Gardens,[3] pay the operating expenses of the project and supervise all repairs, maintenance and operating activities.[4] Additionally, Fireside was responsible for the hiring and day-to-day supervision of employees and remained responsible for the acts and omissions of those employees.[5]

On January 21, 1984, a fire broke out in the apartment unit Gladys Brookins leased at the Larchwood Gardens Apartments. At the time of the fire, Gladys Brookins,

---

1. The Federal Tort Claims Act vests district courts with jurisdiction over suits against the United States for damages for injury or loss of property "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission took place." 28 U.S.C. § 1346(b).

2. Only the first four pages of the actual contract between Fireside and HUD have been made part of the record. *See* Exhibit B attached to the Government's Brief in Support of its Motion for Summary Judgment. The government has represented to the court that neither HUD's files nor the files of Vincent Primavara, the sole proprietor of Fireside, contain the remaining pages of the contract. The government has provided this court with a sample of a contract HUD used in December 1983 which, it represents, is substantially the same as the Project Manager Contract for the Larchwood Gardens property. As there does not appear to be any objection to the use of this sample, and plaintiffs have not contested its use, I will treat the sample contract the government has provided as if it was the actual contract used in this case.

3. *See* Project Management Contract Articles Ownership Phase, Article 9(a) at 10 (Government Exhibit C in Support of Motion for Summary Judgment).

4. *Id.* Article 4(d) at 6.

5. *Id.* at 12.

Leroy Douglas, April Brookins, Clarence Brookins and Lawrence Jett were all present in Gladys Brookins' apartment. The fire captain, John Kelly, and the Fire Marshall, William Snyder found that careless smoking was the cause of the fire. The present litigation ensued, with plaintiffs seeking damages for their injuries sustained in the fire, alleging that HUD was negligent in failing to install smoke detectors and in violating federal rules and regulations regarding inspection and maintenance of the premises.

## II

### Discussion

**A.  Standard of Review**

Under the Federal Rules of Civil Procedure, summary judgment may be granted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This rule is a procedure which enables the court to facilitate the resolution of a pending controversy without the expense and delay of conducting a trial when the critical facts of a case are not in dispute. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden of demonstrating the absence of genuine issues of material fact is initially on the moving party regardless of which party would have the burden of persuasion at trial. *First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins.*, 824 F.2d 277, 280 (3d Cir. 1987). Following such a showing in a case where the non-moving party is the plaintiff and thus bears the burden of proof, it must

present evidence through affidavits or depositions and admissions on file which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

In ruling on a motion for summary judgment, the court must consider the evidence presented in a light most favorable to the non-moving party, *United States v. Diebolo, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986), must give that party the benefit of all reasonable inferences arising from that evidence, *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. If that evidence is, however, " 'merely colorable' or is 'not significantly probative,' summary judgment may be granted." *Equimark Commercial Financing Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting, in part, *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11).

**B.  Federal Tort Claims Act**

As a general matter, the Federal Tort Claims Act serves as a waiver of the government's sovereign immunity. Such waiver is, however, subject to several significant exceptions as the Act only sanctions suit against the United States as a result of a government employee's negligent or otherwise wrongful conduct. Vicarious or strict liability for the torts of independent contractors are thus excepted as theories of liability because these theories fall outside the ambit of the statute. *Carmona v. United States*, No. 86–3754, slip op. at 3–4, 1986 WL 11697 (E.D.Pa. Oct. 17, 1986) (LEXIS, Genfed library, Dist file) (quoting *Bloom v. Waste Management, Inc.*, 615 F.Supp. 1002, 1007 (E.D.Pa.1985), *aff'd*, 800 F.2d 1131 (3d Cir.1986)). *See Laird v. Nelms*, 406 U.S. 797, 92 S.Ct.

1899, 32 L.Ed.2d 499, *reh'g denied,* 409 U.S. 902, 93 S.Ct. 95, 34 L.Ed.2d 165 (1972). "Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver."[6] *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976).

█ The issue upon which this case turns is whether managers of government owned properties are employees of the federal government. It is well settled that "[o]ne who employs an independent contractor is ordinarily not responsible for the acts of the independent contractor or its employees, unless the relation of master and servant or principal and agent exists between them. When an injury is caused by an independent contractor, the person employing him is not responsible for the injury." *Carmona v. United States,* No. 86–3754, slip op. at 6, 1986 WL 11697 (E.D.Pa. Oct. 17, 1986) (LEXIS, Genfed library, Dist file). Thus, if defendants Fireside Realty and Vincent Primavara are employees of HUD, and therefore not independent contractors, then summary judgment must be denied and plaintiffs must be allowed to proceed with this action. If, however, they are, as the government contends, independent contractors, the government is exempt from liability under the FTCA and summary judgment must be granted in its favor.

A trio of recent cases in this district are instructive on this issue in that each has confronted the question of whether the government may be held liable for personal injuries sustained on property owned by the government, but managed by a private realty company who maintained possession of the premises. *See Wollaver v. United States,* No. 89–0772, slip op., 1989 WL 83485 (E.D.Pa. July 24, 1989) (LEXIS, Genfed library, Dist file) (Giles, J.); *Williamson v. United States,* No. 87–1470, slip op. at 2, 1987 WL 15685 (E.D.Pa. Aug. 13, 1987) (LEXIS, Genfed library, Dist file)

(McGlynn, J.); *Carmona v. United States,* No. 86–3754, slip op. at 6, 1986 WL 11697 (E.D.Pa. Oct. 17, 1986) (LEXIS, Genfed library, Dist file) (Weiner, J.).[7] These courts have uniformly held that the private management company was an independent contractor and therefore that the government could not be held liable to an individual who sustained personal injuries on those premises.

In *Carmona,* plaintiff brought suit against the government under the FTCA, alleging that she was injured when she tripped and fell while descending the steps of property which HUD had purchased at a sheriff's sale pursuant to a foreclosure action. The court in *Carmona* found that the government was not the possessor of the property and reasoned that the Area Management Broker was an independent contractor who exercised responsibility to arrange for and supervise the continuing maintenance of the premises where the accident occurred. The Area Management Broker Contract in *Carmona* provided, in part:

> It shall be the duty of the Contractor *to obtain the services of qualified employees in all instances,* and the Contractor shall be responsible for the actions and omissions of such employees in the performance of the contract. All employees engaged in the performance of the contract shall be hired by the Contractor and shall be employees of the Contractor and not employees of the Government.

*Id.* at 5. Judge Weiner found this language to be persuasive in determining that the Area Management Broker and its employees were independent contractors. "The test is control and operation of the property by the Government, and those factors are lacking in this case." *Id.* at 6. Therefore, Judge Weiner found that the government was exempt from liability under the FTCA despite the fact that HUD held title to the property where the acci-

---

**6.** For a discussion of the independent contractor exception to the FTCA and its applicability to this case, *see infra* note 12.

**7.** *Accord Harris v. United States,* 424 F.Supp. 627 (D.Mass.1976).

dent occurred.[8] In the instant case, Number 4(b) of the general provisions of the contract between the government and Fireside provides the *identical* language regarding Fireside's responsibility for the acts and omissions of its employees and I too find this language persuasive in determining that Fireside Realty and its employees were independent contractors.

Last July, in *Wollaver v. United States,* No. 89–0772, slip op., 1989 WL 83485 (E.D.Pa. July 24, 1989) (LEXIS, Genfed library, Dist file), Judge Giles confronted the identical issue in a suit brought under the FTCA to recover damages for personal injuries sustained on government owned property. The government had moved for summary judgment on the ground that the existence of an Area Management Contract placed the property under the control of a private management concern. Finding that the Area Manager was an independent contractor and that the government was thus exempt from liability under the FTCA, Judge Giles granted summary judgment in the government's favor.

In *Wollaver,* plaintiff argued vigorously that certain clauses of the contract between HUD and the Area Management Broker suggested that the government retained a sufficient degree of control and authority to impose liability on the government. These clauses, provided, in pertinent part:

> Administrative Supervision. The day-to-day administrative details of operation under the contract will be under the supervision of the Office in whose territorial jurisdiction the project is situated hereinafter referred to as the Local Office. All communications with the Government not otherwise provided for shall be directed to the Local Office.

> The Government will furnish all services, facilities, materials, and labor as set forth herein and without expense to the Contractor. These will be furnished in one of two methods as indicated hereinafter, namely, (1) obtained and supplied by the Government direct, or (2) the Contractor will be authorized by the Government to obtain them and charge the cost thereof as an operating expense of the project.

*Wollaver,* slip op. at 5–6. The contract between HUD and Fireside Realty in the case at bar provides virtually identical language to the language in the contract in *Wollaver,*[9] and I find, as did Judge Giles, that "neither clause suggests that the Government retains control or authority over the physical day-to-day work contemplated under the contract." *Id.*

Because of the large number of properties the Secretary acquires due to defaulting mortgagors, HUD "contracts with licensed private real estate brokers to protect, preserve, operate and maintain properties in HUD's inventory." *Williamson v. United States,* No. 87–1470, slip op. at 2, 1987 WL 15685 (E.D.Pa. Aug. 13, 1987) (LEXIS, Genfed library, Dist file). In the case at bar, HUD contracted with Fireside Realty to provide management services which included furnishing the continuing services necessary to maintain the buildings and grounds of the Larchwood Gardens Apartments. Fireside was responsible for collecting the rent from the tenants, paying the operating expenses of the project, supervising all repairs, maintenance and operating activities, and was ultimately responsible for the acts and omissions of the employees it hired to perform these operational services.[10] In short, Fire-

---

**8.** *Williamson v. United States,* No. 87–1470, slip op. at 2, 1987 WL 15685 (E.D.Pa. Aug. 13, 1987) (LEXIS, Genfed library, Dist file), decided less than a year after *Carmona,* presented the court with a factual scenario strikingly similar to *Carmona.* Judge McGlynn, in complete accord with the analysis of Judge Weiner, adopted the reasoning of *Carmona* and attached that opinion as an appendix to *Williamson,* finding that the Area Management Broker was an independent contractor who had possession of the premises and that the government was therefore exempt from liability.

**9.** *See* Project Management Contract Articles Ownership Phase—General Provisions at 12, and Article 3 at 5 (Government Exhibit C in Support of Motion for Summary Judgment).

**10.** *See* Project Management Contract Articles Ownership Phase—General Provisions, Article 4(d) at 6 (Government Exhibit C in Support of its Motion for Summary Judgment).

side was both in possession of and essentially responsible for the day-to-day control of Larchwood.

After a careful review of the record, I find that, as in *Wollaver, Carmona,* and *Williamson,* it is clear that Fireside was an independent contractor who maintained control over the day-to-day operation and maintained the exclusive responsibility for supervising and maintaining the Larchwood Gardens Apartments.[11]

"The standard for differentiating between an employee and an independent contractor under the FTCA is whether the government retains authority to control day-to-day detailed physical performance of the work." *Crippen v. Nelson Realty,* 572 F.Supp. 87 (E.D.N.Y.1983) (citing *Logue v. United States,* 412 U.S. 521, 527–28, 93 S.Ct. 2215, 2219–20, 37 L.Ed.2d 121 (1973)). In the case *sub judice,* plaintiffs argue that because the government supervised certain repairs at Larchwood Gardens and engaged outside contractors to replace or supplement Fireside's maintenance personnel, it therefore controlled those individuals responsible for the maintenance and repair of the premises and thus should be held liable for plaintiffs' injuries. I disagree. First, it is well settled that "[t]he government can require compliance with federal standards and contract specifications without being deemed to have day-to-day control," *Crippen,* 572 F.Supp. at 88. Second, under Pennsylvania law, it has long been recognized that an owner out of possession who enters property for the purpose of insuring that the terms of a contract with an independent contractor are being complied with, does not assume the control necessary to impose liability on the owner. *Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 150–52, 189 A.2d 271, 277–78 (1963). In *Fisher v. United States,* 441 F.2d 1288 (3d Cir.1971), for example, an employee of a subcontractor was injured while working at the site of the construction of a dam on government owned land. The Third Circuit, reversing the district court's finding of liability on the part of the government, held that there was insufficient evidence that the government was in possession of the property and found that "under applicable Pennsylvania law the presence of a few government employees, such as an engineer with authority to require the contractor's compliance with a safety plan and two inspectors whose duties included seeing that the work was done in accordance with specifications and enforcing safety regulations at 'the construction site of a large dam' was not evidence that the United States was in possession of the site." *Williams v. Martin Marietta Alumina, Inc.,* 817 F.2d 1030, 1034 (3d Cir.1987) (citing *Fisher,* 441 F.2d at 1291–92). In the instant case, it is clear that the government maintained far less control over the property in question then it did in *Fisher,* and I find that the government should not be deemed to be "in possession" of Larchwood Gardens simply because it supervised certain repairs or because it engaged outside contractors to replace or supplement the work of Fireside's maintenance personnel.

■ Finally, I must of course examine this case "under the principles of the law of the place where the act occurred, here Pennsylvania, to determine whether there is any issue of material fact regarding a theory of liability involving the negligence of Government employees." *Carmona,* No. 86–3754, slip op. Under Pennsylvania law, a possessor of land is liable for physical harm to invitees caused by the possessor's failure to exercise reasonable care. *Giannone v. United States Steel Corp.,* 238 F.2d 544 (3d Cir.1956); *Mathis v. Lukens Steel Co.,* 415 Pa. 262, 203 A.2d 482 (1964); *Beary v. Pennsylvania Electric Co.,* 322 Pa.Super. 52, 469 A.2d 176 (1983). It is clear that "title ownership is not a sufficient basis for liability; it is the *possessor* of land that bears responsibility for dangerous conditions that arise on the

---

**11.** Having found that Fireside Realty was an independent contractor and therefore that this action may not be maintained against the government under the federal Tort Claims Act, I need not reach the issue of whether violations of federal rules and regulations regarding inspection and maintenance of the Larchwood Gardens premises in fact existed at the time of the fire.

premises." *Wollaver v. United States*, No. 89–0772, slip op., 1989 WL 83485 (E.D.Pa. July 24, 1989) (LEXIS, Genfed library, Dist file) (emphasis added). A possessor of land is one "who is in occupation of the land with intent to control it." *Bloom v. Waste Management, Inc.*, 615 F.Supp. 1002, 1015 (E.D.Pa.1985) (quoting the Restatement (Second) of Torts § 328E(a)), *aff'd*, 800 F.2d 1131 (3d Cir.1986). In the case *sub judice*, it is clear that Fireside was the possessor of the Larchwood Gardens Apartments at the time the fire occurred, and that although the government owned the property, such ownership, without more, would not be sufficient under Pennsylvania law to impose liability upon the government for dangerous conditions which arose on the property.[12] Accordingly, because the United States, if it were a private citizen, would not be liable to the plaintiffs under the laws of Pennsylvania, the government cannot be held liable for plaintiffs' injuries.

I find that Fireside Realty was an independent contractor, that the government is exempt from liability under the FTCA and that this court lacks subject matter jurisdiction over plaintiffs' complaint. Therefore, I will grant the government's motion for summary judgment and enter judgment in its favor. Because federal jurisdiction in this case is based solely upon plaintiffs' claim for money damages under the FTCA, 28 U.S.C. § 1346(b), and because I have

dismissed the complaint against the government, there is no other basis for federal jurisdiction and the complaint is therefore dismissed as to all other defendants.

An appropriate order follows.

## ORDER

AND NOW, this 29th day of September, 1989, upon consideration of the motion of the defendant United States of America for summary judgment, the response of the plaintiff thereto and for the reasons set forth in the accompanying memorandum, because there are no genuine issues of material fact present and the defendant United States of America is entitled to judgment as a matter of law, it is hereby ORDERED and DECREED that, pursuant to Federal Rule of Civil Procedure 56, the motion of the defendant is GRANTED, summary judgment is entered in its favor and the action is dismissed without prejudice for want of federal jurisdiction against the remaining defendants.

---

**12.** The government argues that HUD's decision to defer the installation of smoke detectors until the time that a purchaser renovated the property is protected under the rubric of the "discretionary function exception" to the FTCA. The discretionary function doctrine, 28 U.S.C. § 2680(a), provides that the FTCA shall not apply to

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

(Emphasis added). "The discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment." *Berkovitz v. United States*, 486 U.S. 531, ——, 108 S.Ct. 1954, 1960, 100 L.Ed.2d 531 (1988).

This exception, "embodied in the second clause of § 2680(a), marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984). However, "the relevant legislative materials demonstrate that the exception was designed to cover not all acts of regulatory agencies and their employees, but only such acts as are 'discretionary' in nature." *Berkovitz*, 486 U.S. at ——, 108 S.Ct. at 1960. *See also Snyder v. United States*, No. 88–7282, slip op., 1989 WL 110856 (E.D.Pa. Sept. 21, 1989). Because I find that Fireside Realty is an independent contractor and therefore that plaintiffs cannot maintain this suit against the government, it is not necessary for me to reach the issue of whether the discretionary function exception insulates the government from liability in this case.