Beverly **TISDALE,** as natural parent and legal custodian for Christopher Tisdale–Lugo, a Minor

v.

**UNITED STATES of America and Joel K. Coleman d/b/a Coleman Realty Company.**

Civ. No. 1:92–cv–268–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 15, 1993.

593

John Lansing Kimmey, III, James A. Shea, Jr., Germano, Kimmey & Cheatwood, Atlanta, GA, for plaintiff.

Amy Berne Kaminshine, Asst. U.S. Atty., Atlanta, GA, William S. Shelfer, Jr., Parkerson & Shelfer, Decatur, GA, for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on Defendant United States' motion for summary judgment. Plaintiff, Beverly Tisdale, brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and § 2671 *et seq.*, alleging that the United States Department of Housing and Urban Development ("HUD") was negligent in failing to maintain certain property that it owned in a safe condition.

## FACTS

This action arises from an incident which occurred at a house which was owned by HUD and located at 1380 McPherson Avenue, Atlanta, Georgia. On February 7, 1990, Plaintiff visited this home to determine whether she wished to purchase it from HUD. Plaintiff was accompanied by her son, Christopher Tisdale–Lugo ("Christopher"), and Christopher's grandmother, Laverne Tisdale. The grandmother had seen the HUD home at 1380 McPherson Avenue listed for sale in an advertisement in the Atlanta Journal Constitution.

After inspecting the front of the premises, Plaintiff and her son went to the back of the home. Christopher then began to climb a metal staircase which was attached to the rear of the house. Upon reaching the steel and concrete landing at the top of the stairs, the staircase and landing collapsed beneath Christopher without warning. Christopher fell approximately fifteen feet breaking his left ankle. Metal screws were surgically placed in his ankle to try to repair the fracture.

The United States, through its agency HUD, acquired title to the McPherson Avenue property on August 5, 1987 by Special Warranty Deed from Thomas & Nettleton Company. On September 29, 1989, HUD entered into an Area Management Broker ("AMB") contract with Defendant Coleman Realty Company ("Coleman"). Area Management Brokers (or "AMBs") are real estate brokers or other qualified individuals who contract with HUD to arrange for and supervise the management, rehabilitation, and maintenance of HUD-acquired properties.

Under the terms of the AMB contract, Defendant Coleman was responsible for managing certain HUD-owned properties, including the McPherson Avenue property. As an AMB, Defendant Coleman was required to oversee the repair and maintenance of the McPherson property. In addition, Coleman was responsible for continually inspecting the property and eliminating any safety hazards. More specifically, the AMB contract states that Coleman was to (1) post warning signs; (2) notify police, taxing authorities, utility companies, and owner's associations of HUD's interest in the property; (3) notify HUD of damage due to vandalism, fire, and other causes; (4) remove and dispose of interior and exterior trash; (5) secure property to prevent unauthorized entry and damage by elements; (6) winterize operating systems and equipment; (7) order termite and other pest control inspections; (8) eliminate conditions which present safety hazards within five days of assignment of property and thereafter as required; (9) complete and provide HUD with lead based paint hazard report; (10) assume responsibility for keys and/or lock boxes; (11) ensure that grass and shrubbery are cut/trimmed, clippings are removed, and snow is removed from walkways and sidewalks; (12) obtain tax and special assessment bills and forward to HUD for processing/payment; (13) complete form HUD–9516 (Property Disposition Listing Report) and provide to HUD; (14) provide listing of needed repairs, with cost estimates; (15) solicit bids for repairs; (16) inspect completed repairs and ensure that repair contract is properly fulfilled; (17) post HUD "For Sale" sign; (18) routinely inspect properties and document such inspections with HUD inspection Report (9519 or 9519a) every 15 days after initial inspection; (19) determine fair market rental rate; (20) execute month-to-month leases; (21) collect and deposit rent; (22) investigate tenant complaints and provide recommendations to HUD; (23) initiate and administer eviction actions; (24) have operating systems tested and furnish report of condition to HUD; (25) provide assistance to interested parties regarding properties available for sale; (26) provide transportation to HUD representative for property inspections no more than once a month (randomly selected properties); and (27) monitor, inspect, and approve lawn maintenance contractor for area. See Coleman Deposition—Plaintiff's Exhibit A.

Under the terms of the AMB contract, Coleman was required to inspect property newly acquired by HUD within five days of its assignment to Coleman. After this initial inspection, Coleman was required to routinely inspect any HUD property under the contract every fifteen days. Coleman was au-

thorized to make any necessary repairs up to $1,000.00, but any repairs in excess of $1,000.00 required prior authorization from HUD.

HUD's own actions with respect to properties managed by an AMB were as follows. HUD was responsible for placing advertisements in an attempt to sell the properties. Thus, HUD was the party that advertised the McPherson Avenue property for sale by placing an ad in the Atlanta Journal Constitution. In addition, HUD determined the sales disposition of certain property, including the price of the property, whether it was sold as-is, or with or without insurance or escrow repairs. In addition, HUD authorized any repairs that needed to be made in order to sell the property. HUD was required to reassess the property every thirty days if the property was not sold and determine whether to authorize the AMB to do further repairs in an effort to sell the property. Also, as stated above, HUD was responsible for approving all repairs in excess of $1,000.00.

Under certain circumstances, HUD permitted some of its acquired properties to be rented. In these situations, HUD was the party who authorized the rental of the property. HUD was the designated landlord on any lease regarding HUD owned property, and HUD was the party who set the rental rate. HUD was also the party who determined whether an eviction proceeding should be authorized on a leased HUD property.

HUD's duties included overseeing the performance of AMBs such as Coleman. HUD employees referred to as Realty Specialists were required to review documents submitted by an AMB to determine if they were accurate and complete. These HUD Realty Specialists were required to oversee the performance of AMBs. In addition, Realty Specialists were required to inspect at least ten percent of the properties assigned to each AMB. The purpose of these inspections was to make sure the AMBs were complying with the terms of the contract.

## ANALYSIS

Plaintiff alleges in her complaint that Defendant United States, through its agency HUD, was the owner and party in control of the McPherson Avenue property, and, therefore, owed a duty to Plaintiff as invitee to exercise ordinary care in keeping the premises safe. Plaintiff further alleges that the collapse of the staircase and landing which injured her son was the direct result of Defendant's negligence in failing to maintain the premises in a safe condition. In addition, Plaintiff alleges that Defendant United States had a duty to inspect, supervise, and evaluate the performance of Defendant Coleman under the AMB contract. According to Plaintiff, if Defendant United States had properly performed this duty, the dangerous condition posed by the staircase and landing would have been discovered and Plaintiff's son would not have been injured.

Defendant United States now moves for summary judgment essentially alleging that it owed no duty to Plaintiff. Defendant United States maintains that it turned over all management responsibilities of the McPherson Avenue property to Defendant Coleman under the terms of the AMB contract. Accordingly, Defendant United States maintains that Coleman not HUD was in sole possession and control of this property and that Coleman was the party responsible for maintaining the premises in a safe condition.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Defendant] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on Defendant's motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To prevail in its motion for summary judgment, Defendant must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If Defendant makes a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). If the evidence supporting Plaintiff's claims is insufficient for a jury to return a Plaintiff's verdict, or is merely colorable or not significantly probative, then Defendant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a Plaintiff's verdict, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. at 2512.

Plaintiff's claims against Defendant United States are based on the FTCA. The FTCA provides a limited waiver of sovereign immunity for recovery in tort actions against the United States. *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). Under the FTCA, actions against the United States are permitted:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1978).

The FTCA sanctions suits against the United States only for negligent or wrongful conduct *by government employees.* 28 U.S.C. § 1346(b); *Orleans,* 425 U.S. at 813, 96 S.Ct. at 1975. Accordingly, under a well recognized exception to the FTCA, the United States is not liable for the acts of independent contractors it hires. *Orleans,* 425 U.S. at 813, 96 S.Ct. at 1975. The issue of whether an individual is a government employee or an independent contractor under the FTCA is governed by federal law. *Brooks v. A.R. & S. Enterprises, Inc.,* 622 F.2d 8, 10 (1st Cir.1980). The Supreme Court has held that "a critical element in distinguishing an agency [or government employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'"

*Orleans,* 425 U.S. at 814, 96 S.Ct. at 1976 (quoting *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973)). Stated differently, the issue is whether the federal government supervises the "day-to-day operations" of the contractor. 425 U.S. at 815, 96 S.Ct. at 1976.

This court must first consider, therefore, whether Defendant Coleman is a government employee or an independent contractor under federal law. If Coleman is a government employee, the United States can be held liable for any negligent actions of Coleman which resulted in injury to Plaintiff. *Brooks,* 622 F.2d at 10–11. On the other hand, if Coleman is an independent contractor, the United States cannot be held liable for negligent actions of Coleman. *Id.*

This court finds that Defendant Coleman is properly characterized as an independent contractor. Under the terms of the AMB contract between HUD and Coleman, the United States turned over the day-to-day management of the McPherson Avenue property to Coleman. Coleman was required to oversee general repairs and to make sure the property was free from any potentially hazardous conditions. It is true that HUD retained certain responsibilities with regard to properties managed under an AMB contract. For instance, HUD was the party which was responsible for trying to sale the properties and for determining whether any of the properties would be rented until a buyer could be found. These responsibilities retained by HUD, however, do not change the fact that control of the day-to-day management of properties under the AMB contract was in the hands of Coleman.

Coleman, therefore, is properly characterized as an independent contractor under federal law. Other district courts have addressed the question of whether private management companies under AMB contracts with the United States are independent contractors. These courts have uniformly found that these private management companies were independent contractors and, consequently, that the United States could not be held liable for their negligent acts. *See, e.g., Brookins v. United States,* 722 F.Supp. 1214 (E.D.Pa.1989); *Aetna Life & Cas. Ins. Co. v.*

*United States,* 508 F.Supp. 298 (N.D.Ill. 1981); *Harris v. United States,* 424 F.Supp. 627 (D.Mass.1976).

The fact that HUD retained authority to supervise and oversee Coleman's performance under the AMB contract does not affect Coleman's status as an independent contractor. In *Orleans,* the Supreme Court held that the government could ensure that its goals and regulations were being complied with by an independent contractor without transforming the acts of the independent contractor into acts of federal employees within the meaning of the FTCA. 425 U.S. at 815–16, 96 S.Ct. at 1976. The Court explained this holding as follows:

> Billions of dollars of federal money are spent each year on projects performed by people and institutions which contract with the Government. These contractors act for and are paid by the United States. They are responsible to the United States for compliance with the specifications of a contract or grant, but they are largely free to select the means of implementation … Similarly, by contract, the Government may fix specific and precise conditions to implement federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs … into federal government acts.

425 U.S. at 815–16, 96 S.Ct. at 1976.

In her brief in opposition to Defendant's motion for summary judgment, Plaintiff does not seriously contend that Coleman is an employee of the government and that the United States can be held liable for the negligent acts of Coleman. Instead, Plaintiff argues that the United States is liable under the FTCA for its own negligent acts and not the negligent acts of Coleman. Plaintiff asserts two bases for holding the United States liable for its own negligent acts.

■ First, Plaintiff contends that the United States is liable based on its ownership of the McPherson Avenue property where Plaintiff's son was injured. To determine whether the United States can be held liable under the FTCA based on its ownership of the property, this court must apply Georgia law because Georgia is the place where the

incident occurred. 28 U.S.C. § 1346(b). Georgia law provides that:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51–3–1.

■ Based on this Georgia statute, Plaintiff argues that the United States invited her onto the McPherson Avenue property by placing an advertisement in the paper and that the United States is liable for injuries to Plaintiff's son because it failed to maintain the property in a safe condition. Under Georgia law, however, a landowner is relieved of the duties to those who come onto the property if full possession and complete control of the property is surrendered to an independent contractor. *Hodge v. United States,* 310 F.Supp. 1090, 1098 (M.D.Ga. 1969), *aff'd,* 424 F.2d 545 (5th Cir.1970); *Towles v. Cox,* 181 Ga.App. 194, 351 S.E.2d 718, 720 (1986). In these circumstances, the independent contractor becomes the "occupier" of the land within the meaning of Georgia statute O.C.G.A. § 51–3–1. *Hodge,* 310 F.Supp. at 1098.

■ Accordingly, the central issue in determining whether the United States can be held liable as a landowner under Georgia law is whether the United States surrendered possession and control of the McPherson Avenue property to Defendant Coleman under the AMB contract. Under Georgia law, possession is defined as "having personal charge of or exercising the rights of management or control over the property in question." *Id.;* *Towles,* 351 S.E.2d at 720. "Custody and control are the commonly accepted and generally understood incidents of possession." *Hodge,* 310 F.Supp. at 1098; *Towles,* 351 S.E.2d at 720.

Defendant United States contends that possession and control of the McPherson Avenue property were turned over to Defendant Coleman under the terms of the AMB contract. Defendant United States argues

that its agency HUD did not retain any responsibility to maintain the property and to inspect it for any potential hazards. Thus, Defendant United States maintains that they owed no duty to Plaintiff and that they are entitled to summary judgment. Plaintiff, on the other hand, argues that summary judgment is inappropriate because the facts indicate that HUD retained control and a superior right of possession of the McPherson Avenue property.

To support its argument that HUD retained possession and control over the property, Plaintiff points to some of the following factors. According to Plaintiff, HUD had authority to enter, inspect, and repair the property. HUD was the party that advertised the property for sale by placing an ad in the Atlanta Journal Constitution. HUD also authorized any repairs that needed to be made by the AMB in order to sale the property and authorized any routine repairs in excess of $1,000.00 that needed to be made. Plaintiff also points out that HUD had a separate contract with another contractor to perform lawn care and maintenance for properties under the Coleman contract. Based on these and other factors, Plaintiff contends that there are genuine issues of material fact as to which party was in control of the McPherson Avenue property.

After reviewing the evidence, the court finds that there is no genuine issue of material fact as to whether HUD transferred full possession and control of the McPherson Avenue property to Defendant Coleman. Both the terms of the AMB contract and the facts of the case demonstrate that Coleman assumed complete control of the day-to-day responsibilities associated with the McPherson Avenue property. The express terms of the contract require Coleman to manage, maintain, repair, and oversee the McPherson Avenue property.

Coleman was specifically required to inspect the property every fifteen days for potential hazardous conditions such as the alleged faulty staircase and landing which injured Plaintiff's son. Joel Coleman, the sole proprietor of Defendant Coleman, testified that he instructed his employees to always look for hazards when inspecting a property and to communicate such hazards to him. Deposition of Joel Coleman at 113–14.[1] Bob McClellan ("McClellan"), one of Coleman's employees who conducted routine inspections of HUD property, testified that he was instructed by Coleman to "watch out for steps and decks, rotten boards or missing boards or things of that nature that might cause a problem." Deposition of McClellan at 34. McClellan further testified that "we were pretty much under instructions to watch for hazards because we knew there were a lot of people that went by these properties, other agents and people that didn't have an agent with them that would walk around the property." *Id.* at 34–35. McClellan stated that he would have reported a rusty metal staircase that appeared hazardous. *Id.*[2] This evidence indicates that Coleman not HUD had the responsibility to inspect the McPherson Avenue property for hazards under the AMB contract.

None of the facts set forth by Plaintiff raise a genuine issue as to whether possession and control of the McPherson Avenue property was transferred to Coleman. HUD's retention of the right to determine the disposition of the property and its retention of the right to approve major repairs to the property are the type of responsibilities that landowners would normally assume over their properties. The retention of these rights does not indicate that HUD did not relinquish complete possession and control of day-to-day activities with respect to the McPherson Avenue property to Coleman. Furthermore, although HUD did inspect ten percent of all properties managed by AMBs, the purpose of these inspections was to determine if AMBs such as Coleman were com-

---

**1.** When explaining what he would consider to be a hazard, Joel Coleman used rotten boards on a deck as an example. Deposition of Joel Coleman at 114.

**2.** Plaintiff's expert, John A. Kamisky ("Kamisky"), testified in his deposition that the deck collapsed due to extensive rust on the supporting structures. Kamisky further testified that the extensive rust should have been discovered as a potential hazard during an inspection of the property.

plying with the terms of their contracts. The Georgia courts have held that a landowner can retain the right to inspect an independent contractor's work to ensure compliance with the contract without becoming liable for negligent acts of the independent contractor. *Hodge*, 310 F.Supp. at 1103; *see also Englehart v. OKI America, Inc.*, 209 Ga.App. 151, 433 S.E.2d 331 (1993).

Accordingly, the court finds that there is no genuine issue of material fact as to whether Defendant United States through its agency HUD retained possession and control of the McPherson Avenue property. Instead, the facts of this case establish that possession and control of the property were relinquished to an independent contractor, Defendant Coleman. Under Georgia law, therefore, Coleman is properly viewed as the occupier of the property, and Coleman not the United States is liable for any negligent failure to maintain the premises in a safe condition.

■ Plaintiff argues that under Georgia law, a landowner owes a nondelegable duty to protect invitees from injury. Georgia law, however, indicates that if a landowner surrenders possession and control of property to an independent contractor, the nondelegable duty is assumed by the independent contractor because the contractor is substituted for the landowner as the "occupier" of the land. *See Towles*, 351 S.E.2d at 720–21.[3]

Plaintiff also contends that the issue of whether a landowner or an independent contractor is in possession of property is an issue of fact for the jury under Georgia law. The court has reviewed Georgia cases which have allowed this issue to go to the jury. In most of these cases, a landowner hired an independent contractor to perform work on its property. The landowner, however, retained some type of presence at the property while the work was being performed by the independent contractor. *See, e.g., Towles,* 351 S.E.2d at 720–21; *Williams v. Nico Industries, Inc.*, 157 Ga.App. 814, 278 S.E.2d 677 (1981), *overruled on other grounds by, Malvarez v. Georgia Power Co.*, 250 Ga. 568, 300 S.E.2d 145 (1983). In this case, Plaintiff has presented no evidence that HUD maintained some type of presence at the McPherson Avenue property. Instead, possession of the property was completely transferred to Coleman under the terms of the AMB contract. Accordingly, the United States cannot be held liable as the owner of the property under Georgia law for injuries sustained by Plaintiff's son.

District courts in other jurisdictions have similarly found that the United States cannot be held liable under the FTCA for personal injuries sustained on property owned by the government but managed by private realty companies under AMB contracts such as the one in this case. In *Brookins v. United States,* the plaintiffs were injured in a fire at an apartment building which was acquired by HUD following a mortgage foreclosure sale. 722 F.Supp. at 1215–16.[4] In an effort to hold the United States liable in *Brookins,* the plaintiffs raised many of the same arguments as Plaintiff in this case. For instance, the plaintiffs in *Brookins* argued that the United States controlled the work of the AMBs because it supervised certain repairs and contracted directly with outside contractors to supplement the work of the AMB. The district court, however, found that these facts did not establish that the United States was in possession and control of the property under Pennsylvania law and granted summary judgment in favor of the United States. 722 F.Supp. at 1219–20.[5] Other courts have reached similar results. *See, e.g., Aetna Life & Cas. Ins. Co. v. United States,* 508 F.Supp. 298 (N.D.Ill.1981) (summary judgment for United States); *Wollaver v. United States,* 1989 WL 83485 (E.D.Pa.1989) (summary

---

3. In her complaint, Plaintiff admits that Coleman was the occupier of the property. *See* Complaint ¶ 20 ("Defendant Coleman, by virtue of its contract with HUD, was the occupier of said property. Defendant Coleman was in possession and control of the aforementioned property.").

4. One of the plaintiffs in *Brookins* had entered into a lease with HUD to rent one of the apartments in the building.

5. Similar to Georgia law, Pennsylvania law imposes liability on the possessor of land for physical harm to invitees caused by the possessor's failure to exercise reasonable care. *Brookins,* 722 F.Supp. at 1219–20. Furthermore, Pennsylvania law defines a possessor of land as one 'who is in occupation of the land with intent to control it.' *Id.* (citations omitted).

judgment for United States); *Smith v. United States*, 674 F.Supp. 683 (D.Minn.1987) (summary judgment for United States).

■ Plaintiff's second argument for holding the United States liable for its own acts of negligence is that the United States was negligent in failing to inspect, supervise, and evaluate the performance of Defendant Coleman pursuant to the AMB ·contract and applicable HUD publications and guidelines. As stated above, the United States is not liable under the FTCA for the acts of independent contractors. Plaintiff, however, correctly points out that "the employment of an independent contractor does not necessarily insulate the United States from liability for its own employees' independent acts of negligence which occur in connection with the work of an independent contractor." *Berman v. United States*, 572 F.Supp. 1486, 1491 (N.D.Ga.1983); *see also Logue*, 412 U.S. at 532–33, 93 S.Ct. at 2222.

Plaintiff raises the following arguments in support of her position that HUD was negligent in its supervision of Coleman under the AMB contract. First, Plaintiff states that Coleman was required to inspect the McPherson Avenue Property every fifteen days and complete an inspection report Form HUD 9519A after each inspection. Plaintiff indicates that Defendant Coleman did not file any inspection reports with HUD from the beginning of the contract on September 29, 1989 until August of 1990. Second, Plaintiff states that HUD Realty Specialists were required to do a bimonthly evaluation of the AMB and that there is no evidence that any bimonthly evaluations of Coleman were performed by HUD prior to February 7, 1990, when Plaintiff's son was injured. Third, Plaintiff asserts that the Chief Property Officer of HUD was required to perform a quarterly inspection of an AMB's inventory and that there is no evidence that any quarterly inspections were performed by HUD under the Coleman contract prior to February 7, 1990. In fact, Plaintiff asserts that there is no evidence that HUD ever inspected the property at McPherson Avenue.

In sum, Plaintiff argues that HUD's failure to evaluate Defendant Coleman's perfor-

mance under the AMB contract created an unreasonable risk of harm to Plaintiff and others. According to Plaintiff, if HUD had required Coleman to submit the HUD–9519A inspection forms as required by the contract, HUD would have been aware of the condition of the property or that Coleman was not performing inspections and, therefore, would have been aware that an unreasonable risk of harm to invitees probably existed.

The court ·finds that the evidence in this case does not support Plaintiff's broad· assertions. In his deposition, Joel Coleman states that his company did make inspections every fifteen days as required by the contract. Joel Coleman admitted that he did not always have his employees fill out an inspection report at the beginning of the contract. In explaining the failure to submit these inspection reports to HUD, Joel Coleman testified that he believed it was not necessary to complete an inspection report unless a problem was discovered that needed to be communicated to HUD. Deposition of Joel Coleman at 39–40. HUD later told Joel Coleman that he needed to complete an inspection report for all inspections regardless of whether something needed to be reported to HUD. Joel Coleman complied with HUD's request and began filing inspection reports for all inspections made by his employees. Coleman Deposition at 40. Thus, there is evidence in the record which suggests that routine inspections were made of the McPherson Avenue property. In fact, a separate sign-in sheet kept at the McPherson Avenue property indicates that Coleman had inspected the property on January 30, 1990, approximately·one week before Plaintiff's son was injured on February 7, 1990. *See* Deposition of Paul Jones—Plaintiff's Exhibit 7.[6]

The court also finds that Plaintiff has pointed to no evidence in the record which demonstrates that Realty Specialists at HUD failed to conduct bimonthly evaluations of Defendant Coleman's performance as a AMB. Fran Wallace, one of the Realty Specialists at HUD who was responsible for overseeing Coleman's performance under the. AMB contract, testified that Coleman's work was satisfactory under the contract and that

---

6. This sign-in sheet was kept in the house located on the McPherson Avenue property, and the sheet was signed each time anyone entered the home.

she never received any complaints about Coleman. Deposition of Fran Wallace at 62.

After reviewing the evidence, the court finds that there is no genuine issue of material fact as to whether the United States was negligent in its supervision of Defendant Coleman under the AMB contract. Fran Wallace at 62. Instead, the court believes Plaintiff's claim of negligent supervision is merely another attempt to hold the United States liable for any negligent acts of Coleman. As stated above, the United States cannot be sued under the FTCA for the negligent acts of independent contractors it hires. The Supreme Court has held that "[s]ince the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, *including the independent contractor exception,* to such waiver." *Orleans,* 425 U.S. at 814, 96 S.Ct. at 1976 (emphasis added).

In this case, the United States hired Coleman as an independent contractor to oversee and manage the McPherson Avenue property. One of Defendant Coleman's specific duties under the contract was to inspect for and eliminate any safety hazards, such as the alleged defective staircase and landing which injured Plaintiff's son.[7] Under the FTCA, the United States cannot be held liable for any negligent failure of Coleman to perform its responsibilities under the AMB contract.[8] Defendant United States, therefore, is entitled to summary judgment.

### CONCLUSION

Accordingly, Defendant United States' motion for summary judgment [# 31–1] is GRANTED.

SO ORDERED.

---

**7.** In his deposition, Joel Coleman testifies that he would order any safety hazards on the property to be fixed immediately.

**8.** Plaintiff also makes a sketchy argument that Defendant United States can be liable for ratifying the unauthorized wrong of Coleman, the independent contractor, under O.C.G.A. § 51–2–5(6). Again, this claim is without merit because the Supreme Court has indicated that the United States cannot be held liable for the acts of independent contractors under the FTCA. *Orleans,* 425 U.S. at 813, 96 S.Ct. at 1975. Plaintiff cannot rely on Georgia law to find an exception to this rule. Georgia law is relevant under the FTCA only when considering whether the United States is liable for the acts of its own employees. 28 U.S.C. § 1346(b).