Perry D. BROOKS, pro se, and as father of his minor daughter Lorianne Marie Brooks; and Cathy Anne Brooks, Plaintiffs, Appellants,

v.

A. R. & S. ENTERPRISES, INC. et al., Defendants, Appellees.

No. 79–1298.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1980.

Decided May 28, 1980.

WISDOM, Circuit Judge:

This appeal raises the question whether the driver of a United States Navy vehicle who negligently injured the plaintiffs' minor daughter was an "employee" of the United States within the meaning of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (FTCA), when at the time of the accident the driver was employed by a corporation engaged by the United States to provide security services at a naval base. The district court dismissed the plaintiffs' complaint against the United States on the ground that the driver was an employee of a "contractor with the United States" rather than an "employee" of the United States. We affirm on the ground that the district court's finding was not clearly erroneous.

I.

The plaintiffs, Perry D. Brooks and Cathy Anne Brooks, individually and on behalf of their minor daughter, Lorianne Marie Brooks, sued A.R.&S. Enterprises, Inc., (AR&S), its liability insurance carrier, Utica Mutual Insurance Co., and the United States to recover damages arising from injuries sustained by their daughter when she was struck by a motor vehicle on Ramey Air Base in Puerto Rico. The vehicle that struck Lorianne Brooks was owned by the United States Navy, but was operated by Orlando Acevada Rivera, a security guard employed by AR&S. AR&S was under contract with the United States to provide guard services at the West Annex of Roosevelt Roads Naval Station (Ramey Air Base).[1] The plaintiffs maintained that AR&S was liable for their daughter's injuries under the doctrine of respondeat superior. The plaintiffs sought recovery against the United States under the FTCA on the

Francisco Castro Amy, San Juan, P. R., for plaintiffs, appellants.

Vilma J. Vila Selles, Asst. U. S. Atty., San Juan, P. R., with whom Jose A. Quiles, U. S. Atty., Old San Juan, P. R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, WISDOM, Senior Circuit Judge **, CAMPBELL, Circuit Judge.

** Of the Fifth Circuit, sitting by designation.

1. The United States Navy entered an agreement with the Small Business Administration (SBA) providing that the SBA would engage a third party to furnish guard services at the Ramey Air Base. The SBA then executed such a contract with A.R.&S. Enterprises, Inc. The contracts are identical insofar as the issues in this case are concerned and will be treated as a single contract.

theory that Rivera was an employee of the United States at the time of the accident.[2]

After the plaintiffs settled their claims against AR&S and Utica Mutual, the district court held an evidentiary hearing limited to the question whether Rivera was an employee of the United States within the meaning of the FTCA.[3] The evidence introduced at the hearing showed that the United States/AR&S contract governed in detail the duties of AR&S personnel at the base. Under the contract, AR&S guards regulated the entrance and exit of all vehicles that passed through the main gate at the Ramey Air Base and maintained security throughout the base. AR&S responsibilities included enforcing laws at the base, preparing police reports, investigating traffic accidents and domestic disturbances, escorting military personnel, plotting weather reports, and inspecting fires. AR&S guards were furnished vehicles and equipment by the Navy and their activities were inspected routinely by Naval personnel to assure compliance with the contract. AR&S's responsibilities were subject to change in accordance with the Navy's needs. AR&S, however, directly supervised the hiring of personnel and disciplining of the guards, and controlled the guards' daily work assignments. On this evidence, the district court concluded that Rivera was not an employee of the United States within the meaning of the FTCA and entered judgment for the United States. The plaintiffs appealed. We are limited, of course, to considering whether the district court's findings of fact were clearly erroneous. *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed.2d

20 (1954); *Maritime Overseas Corp. v. Puerto Rico Drydock & Marine Terminals, Inc.*, 391 F.2d 1010, 1013 (1st Cir. 1968).

## II.

■ The United States is liable under the FTCA to the same extent as a private party for torts of its employees acting within the scope of their employment. 28 U.S.C. § 1346(b); *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). Whether the United States is liable for the acts of its employees is a question of state law,[4] but whether an individual is an employee of the United States under the FTCA is determined by federal law.[5] The FTCA provides that the term "employees of the government" includes officers or employees of any federal agency. 28 U.S.C. § 2671. "Federal agency" includes the executive departments and individual establishments of the United States, but does not include any contractor with the United States. *Id.* Under the statute, therefore, the United States is not liable for the negligence of an employee of an independent government contractor.

■ In *Orleans* the Supreme Court held that a party under contract with the government becomes an agency of the United States within the meaning of the FTCA only if "its day-to-day operations are supervised by the Federal government". 425 U.S. at 815, 96 S.Ct. at 1976. If day-to-day control over the contractor exists, the United States is liable for injuries caused by the negligence of the contractor's em-

---

**2.** Under the FTCA, the United States is liable for torts of its employees "to the same extent as a private individual under like circumstances". 28 U.S.C. § 2674.

**3.** Before conducting the evidentiary hearing, the district court had denied the parties' motions for summary judgment on the ground that there were unresolved issues of fact concerning Rivera's status as a United States employee.

**4.** 28 U.S.C. § 2674; *United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805, 809 (1963); *Rodriguez v. United States*, 455 F.2d 940, 941–42 (1st Cir. 1972); *Perez v. United States*, 368 F.2d 320, 321 (1st Cir. 1966).

**5.** *See LeFevere v. United States*, 362 F.2d 352, 353 (5th Cir. 1966); *Fisher v. United States*, 356 F.2d 706, 708 (6th Cir.), *cert. denied*, 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966); *Bruckner v. United States*, 338 F.2d 427, 428 n.2 (9th Cir. 1964), *cert. denied*, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965); *Pattno v. United States*, 311 F.2d 604, 605 (10th Cir. 1962), *cert. denied*, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963); *Courtney v. United States*, 230 F.2d 112, 114 (2nd Cir. 1956). *But cf. Buchanan v. United States*, 305 F.2d 738, 742 (8th Cir. 1962).

ployees. We must determine, therefore, whether the United States maintained sufficient control over the daily operations of AR&S to subject the government to liability for the negligence of AR&S employees at the base.

The plaintiffs argue that the United States exercised daily supervision over the activities of AR&S. The plaintiffs' contention is based on the language of the contract and the interaction between the United States Navy personnel and the AR&S guards. The plaintiffs maintain that since the contract governed in detail the duties of the AR&S guards at the base, the guards, in effect, were controlled by the United States. Contracts typically define the parameters of the contracting parties' responsibilities. That AR&S personnel were to perform tasks specified in a contract negotiated at arm's length does not bear, however, on the critical question whether the government supervised the daily activities of the guards. The wages received by AR&S employees were paid by the company in accordance with a collective bargaining agreement between AR&S and a local union. The applicability of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, to the wages does not, of course, affect AR&S's standing as an independent contractor. *Cf. Strangi v. United States*, 211 F.2d 305, 306–07 (5th Cir. 1954).

The plaintiffs also point out that the contract specified the training and qualifications of AR&S guards. Although the contract required that the guards be trained in accordance with a Navy security manual, the contract specifically delegated to AR&S the responsibility for recruiting and training the guards. The evidence shows that Captain Gonzales, the Project Manager for the AR&S, was in charge of the guards at the base, supervised their training, and was not controlled by Navy personnel. Guards, however, received security approval from a United States Naval Office before being assigned to the base and could be dismissed if they jeopardized military security. The Navy had a legitimate interest in assuring the security of the base and the suitability of AR&S personnel for guard duty, but the

government's authority under the safety program to screen applicants and to discharge guards who threatened military security did not constitute control within the meaning of the FTCA. *Alexander v. United States*, 605 F.2d 828, 833–34 (5th Cir. 1979); *United States v. Page*, 350 F.2d 28, 31 (10th Cir. 1965); *see United States v. Orleans*, 425 U.S. at 815, 96 S.Ct. at 1976.

■ The United States Navy furnished motor vehicles and virtually all of the equipment used by the guards. AR&S provided uniforms to the guard subject to strict government specifications. The plaintiffs say that this is evidence that AR&S was a federal agency. We disagree. The United States may supply vehicles and other property to its contractors without exposing itself to liability under the FTCA. *Yates v. United States*, 365 F.2d 663, 665–66 (4th Cir. 1966); *Sowicz v. United States*, 368 F.Supp. 1165, 1172–75 (E.D.Pa.1973), *aff'd mem.*, 505 F.2d 731 (3rd Cir. 1974). The critical question is not whether a government contractor performs its contractual obligations with United States property or in accordance with federal standards and regulations, but whether the United States directs the manner in which the contractor carries out its obligations under the contract. *Logue v. United States*, 412 U.S. 521, 527–28, 93 S.Ct. 2215, 2219–20, 37 L.Ed.2d 121, 128 (1973). Here, the Navy did not supervise the manner in which AR&S used government property. Therefore, AR&S's use of Navy vehicles, by itself, does not show that AR&S guards were employees of the United States.

Finally, the plaintiffs argue that the United States, through its daily supervision and inspection of the activities of AR&S at the Ramey Air Base, exercised sufficient control over AR&S to satisfy the test of liability under *Orleans*. The plaintiffs have correctly stated the law governing FTCA liability, but the determinative facts in this case do not show that the United States, through its Navy personnel at the Ramey Air Base, controlled the detailed performance of AR&S's work at the base. The

**12**

language of the contract, while not dispositive, does expressly contradict the plaintiffs' argument. The contract required AR&S "to furnish *supervisory, administrative* and direct labor personnel" (emphasis added).[6] The contract also explicitly stated that "[a]ll employees of the contractor employed in the performance of the work under this contract shall be employees of the contractor at all times and not the government."[7] Although the contract specified the guards' pay scale and the work to be performed at the base, the AR&S project manager, Captain Gonzales, assigned guards to posts, coordinated their work schedules, and supervised their daily activities while on duty. As noted, the guards were paid directly by AR&S rather than by the United States Navy.

The plaintiffs emphasize that a Navy security officer was authorized to conduct daily inspections of guard activities and to alter work assignments in accordance with the Navy's needs. The exclusive purposes of these inspections was to ensure that AR&S fulfilled its obligations under the contract. Courts applying the FTCA have consistently held that a government's right to inspect the work of a contractor and to stop work that does not conform to the terms of the contract does not constitute control over the contractor's employees. *Perez v. United States*, 594 F.2d 280, 285–87 (1st Cir. 1979); *Alexander v. United States*, 605 F.2d at 834; *Yates v. United States*, 365 F.2d 663, 666 (4th Cir. 1965); *Kirk v. United States*, 270 F.2d 110, 117 (9th Cir. 1959). The right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors. This case is no exception. The Navy security officer who routinely inspected AR&S's personnel was not authorized to supervise guard activities or to reprimand guards for misconduct. He was permitted only to call Captain Gonzales's attention to failure of guards to perform their work according to the requirements of the contract.[8] Captain Gonzales, as the commanding AR&S officer at the base, was responsible for remedying deficiencies in guard services and for disciplining AR&S personnel. Similarly, that Navy personnel could request changes in guard activities in accordance with the contract does not amount to direct control over the guards since Captain Gonzales was directly responsible for carrying out changes requested by the Navy rather than Navy personnel. In short, the United States did not exercise day-to-day control over the activities of AR&S.

We conclude that the district court was not clearly erroneous in finding that AR&S was an independent contractor of the government and in denying the plaintiffs recovery under the Federal Tort Claims Act for the negligence of an AR&S employee. The judgment is *Affirmed.*

---

6. United States/AR&S contract, § F.2(a), "Contractor Personnel".

7. *Id.* at § F.2(b).

8. *Id.* at § I(c)–(e).