Joseph R. MILLER and Maria J. Goncalves, Plaintiffs,

v.

GEORGE ARPIN & SONS, INC. and United States of America, General Services Administration, Defendants.

C.A. No. 95–304L.

United States District Court, D. Rhode Island.

Jan. 7, 1997.

Richard G. Galli, Barbara Harris, Providence, RI, for plaintiffs.

James H. Reilly, III, Kelly, Kelleher, Reilly & Simpson, Providence, RI, for Defendant Arpin.

Anthony C. DiGioia, Assistant U.S. Attorney, Providence, RI, for defendant USA, GSA.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This is a negligence action stemming from a slip and fall incident at the John O. Pastore Post Office and Federal Building in Providence, Rhode Island ("the Pastore Building"). The matter is presently before the Court on defendant United States of America's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, or in the alternative, for summary judgment. For the reasons that follow, the motions are denied.

### I. Background

■ The following facts are not in dispute, unless otherwise noted. The Pastore Building, located in the heart of Providence, Rhode Island, is owned, operated, and maintained by the United States through the General Services Administration ("GSA"), a federal agency.[1] On September 9, 1994, defendant George Arpin & Sons, Inc. ("Arpin") entered into a contract with the GSA to move the contents of the Department of Housing and Urban Development's ("HUD") offices from the Pastore Building to HUD's new offices on Weybosset Street. The relocation was well under way by the morning of September 15, with Arpin's moving vans parked outside the northwest entrance to the Pastore Building. To facilitate the moving process, a ramp extended from one of the vans to the top of the stairs leading to the northwest entrance, partially obstructing this entrance. In addition, a piece of metal flashing was placed over the threshold of the northwest doorway, apparently to allow Arpin employees to more easily wheel hand trucks and dollies over the threshold.[2] A second front entrance to the building remained unobstructed.

At approximately 8:15 a.m. on September 15, plaintiff Joseph R. Miller ("Miller") came to the Pastore Building accompanied by his fiancee, plaintiff Maria J. Goncalves ("Goncalves"). As he entered via the northwest doorway, Miller apparently tripped over the metal flashing, fell to the floor, and fractured the patella bone in his knee. After their administrative claims were denied by the United States/GSA, plaintiffs filed the present action against both Arpin and the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq. Miller seeks a recovery of tort damages incidental to his broken knee, while Goncalves seeks to recover for the loss of Miller's consortium.[3]

Plaintiffs assert that the negligence of both the United States and Arpin created the conditions which led to Miller's fall; the complaint cites both active acts of negligence and inadequate supervision by both defendants. In particular, plaintiffs allege that the flashing protruded about an inch from the floor over the threshold, a dangerous condition that they note could have been avoided by taping the sides of the metal plate to the floor, or by posting warning signs by the doorway. Plaintiffs also claim that the lighting in the entranceway was insufficient to allow Miller to see the flashing and avoid tripping. Finally, the complaint charges both defendants with a duty to supervise the move and thereby keep the premises safe for passers-by. Plaintiffs maintain that this duty was breached in that both Arpin and

---

1. A claim against the GSA is treated as an action against the United States, as any judgment must be paid from the public treasury. *See Goldman v. United States,* 790 F.2d 181, 182 (1st Cir.1986).

2. The dictionary definition of flashing is "sheet metal used in waterproofing roof valleys or hips or the angle between a chimney and a roof." Webster's Ninth New Collegiate Dictionary 470 (1986). For the present purposes the Court will assume that there are other acceptable uses of flashing, such as the use to which it was put here—apparently as a mini-ramp over a rise in a threshold.

3. Miller and Goncalves were engaged at the time of the accident and were subsequently married. According to the complaint, their vacation and honeymoon plans were ruined as a result of Miller's broken knee.

the government were on notice of the dangerous condition before the accident—as evidenced by a federal police officer's comments upon viewing the accident scene [4]—but failed to act to remedy the problem.

The United States has denied any negligence on its part or on the part of any federal employee, and further denies any liability for plaintiffs' injuries based upon the actions of Arpin employees.[5] Accordingly, the government has filed the present motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim, or, in the alternative, for summary judgment. The United States urges dismissal on two grounds. First, the government avers that it cannot be held liable for the torts of an independent contractor, Arpin, to whom the GSA had delegated the responsibility for maintaining the safety of the premises during the moving work. Second, the government maintains that any claim for negligent delegation of public safety duties to Arpin, or for inadequate supervision of Arpin's activities by the GSA, is barred by the discretionary function exception to the FTCA's waiver of sovereign immunity, 28 U.S.C. § 2680(a).

After hearing arguments of counsel, the Court took the matter under advisement. The motions are now in order for decision.

## II. Discussion

 While the weight of the arguments advanced by the parties seem more particularly directed to the Rule 12(b)(6) and summary judgment motions filed by the United States, the Court will begin by addressing the question of subject matter jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). If the Court lacks subject matter jurisdiction over plaintiffs' claims against the United States, it has no power or authority to hear or decide those claims, and thus all other motions would

become moot. *See Northeast Erectors Ass'n of the BTEA v. Secretary of Labor, Occupational Safety & Health Admin.,* 62 F.3d 37, 39 (1st Cir.1995); 5A Charles Wright & Arthur Miller, Federal Practice and Procedure § 1350 (2d ed. 1990).

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

 It is well settled that "the United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)). The Federal Tort Claims Act is one such waiver of the government's sovereign immunity. As such, the terms of the FTCA set the parameters for this Court's exercise of jurisdiction over tort suits against the United States. *See United States v. Orleans,* 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976).

 Under the FTCA, the United States is liable to the same extent as a private party for torts of its employees acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2674.[6] Whether the United States is liable for the acts of its employees is a question of state law, but whether an individual is an employee of the United States under the FTCA is determined by reference to federal law. *See Brooks v. A.R. & S. Enters., Inc.,* 622 F.2d 8, 10 (1st Cir. 1980). The FTCA defines "employees of the government" to include officers or employees of any federal agency. 28 U.S.C. § 2671. The Act further defines a "federal agency" to include the executive departments and the independent establishments of the United States, but specifically excludes any contrac-

---

4. According to the affidavit of Goncalves, upon inspecting the scene officer Ronald Rocha asked to see the Arpin supervisor, and told an Arpin employee that "I told [the supervisor] both sides of the plate should have been taped to prevent tripping."

5. In its answer, the United States also asserts that Miller's own negligence contributed to cause

the accident, and has filed cross-claims against Arpin for indemnification and contribution.

6. Unlike a private landowner, the United States cannot be liable merely because it owns or controls the property—the FTCA requires plaintiffs to identify an "actor whose negligence might be imputed to the government." *See Berkman v. United States,* 957 F.2d 108, 113 (4th Cir.1992).

tor with the United States from that definition. *Id.* Under the terms of the FTCA, therefore, the United States is not liable for the negligence of an employee of an independent government contractor. *See Orleans,* 425 U.S. at 814, 96 S.Ct. at 1975–76; *Brooks,* 622 F.2d at 10. Working within this framework, it is clear that the United States cannot be held liable under the FTCA for any negligent acts of Arpin employees, as Arpin clearly is a government contractor.

 While there are exceptions to the independent contractor rule, the exceptions are not applicable to the present case. As the Supreme Court has noted, in the rare case a contractor may be considered an agency of the United States for purposes of the FTCA if "its day-to-day operations are supervised by the Federal government." *See Orleans,* 425 U.S. at 815, 96 S.Ct. at 1976. As subsequent cases have made clear, however, something more than "mere supervision" is necessary, and in the present case there is no indication that the United States in any way "direct[ed] the manner in which the contractor carrie[d] out its obligations under the contract." *See Brooks,* 622 F.2d at 10–12. Indeed, as provided by the agreement between Arpin and GSA, in this case the contractor directed daily operations and retained supervisory authority.[7] *Compare id.* at 12 (invoking language of contract to determine if United States exercised sufficient daily control over contractor). At most, federal employees retained the right to inspect Arpin's activities to ensure that Arpin fulfilled its contractual obligations. As the First Circuit has consistently held, such a right to inspect does not nullify the general rule that the government is not liable for the torts of independent contractors. *See, e.g., Larsen v. Empresas El Yunque, Inc.,* 812 F.2d 14, 15 (1st Cir.1986); *Brooks,* 622 F.2d at 12.

 Accordingly, if all that plaintiffs had alleged was the negligence of Arpin employees, the Court would lack subject matter jurisdiction and the case against the United States would be dismissed. However, plaintiffs have done more than this, as the complaint and supporting documents also raise the specter of negligence on the part of federal employees acting within the scope of their employment.[8] Specifically, plaintiffs maintain that Officer Rocha was aware of the hazardous condition before the accident but failed to remedy the situation. Further, conflicting deposition testimony raises a factual question concerning whether it was an Arpin employee or a federal employee who placed the metal flashing over the threshold. As these claims are premised squarely upon acts or omissions of federal employees, the claims invoke the Court's subject matter jurisdiction under the FTCA.

 Plaintiffs also assert that insufficient lighting in the threshold was a contributing cause of the accident, and seek to hold the United States liable for this condition. The government has met this claim with the broad assertion that the Arpin–GSA contract delegated the responsibility for public safety on the premises to Arpin, thus shielding the United States from any liability resulting from insufficient lighting in the threshold area. However, the Court's review of the contract suggests that any such delegation entailed the safety of the premises only as regards the moving activities, not the overall safety of the premises.[9] As the lighting of the building remained within the control of GSA employees independent of Arpin's activities, there is subject matter jurisdiction over a negligence claim against the government based on insufficient lighting. *See Angel v. United States,* 775 F.2d 132, 145 (6th Cir. 1985) (United States liable where dangerous

7. "The Contractor shall furnish adequate supervision, labor, materials, supplies, and equipment necessary to perform all the services required under this contract." United States/Arpin Contract, Supplemental Provisions ¶ 3(a) at 53 ("Services to be Furnished by the Contractor").

8. A court may consider affidavits, deposition testimony, and other extra-pleading material to determine whether subject matter jurisdiction ex-

ists. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995).

9. As the agreement between GSA and Arpin only involved the relocation of HUD's offices, it would strain logic to read the contract to include a delegation of safety duties beyond the scope of this move.

condition existed independent of contractor's activities).

■ The government's reliance on the discretionary function exception to FTCA liability is misplaced. As the United States correctly recognizes, this exception would serve to shield the government from liability for the negligent delegation of safety duties or supervisory authority to Arpin, or for negligence in the selection of an independent contractor. 28 U.S.C. § 2680(a). However, if a federal employee was aware of a dangerous condition at the Pastore Building, the failure to remedy or warn is not a decision "of the nature and quality that Congress intended to shield from tort liability." *United ed States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). In short, the negligent acts of federal employees alleged in this case cannot properly be considered acts of discretion, and thus should not be protected by § 2680(a).

Accordingly, the Court concludes that there is subject matter jurisdiction over plaintiffs' claims against the United States under the FTCA, because the claims are premised on the negligence of federal employees acting within the scope of their employment. Thus, the motion to dismiss pursuant to Rule 12(b)(1) is denied.

### B. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiffs, taking all well-pleaded allegations as true and giving plaintiffs the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994), *cert. denied*, –– U.S. ––, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also* 5A Charles Wright & Arthur Miller, Federal Practice and Procedure § 1357 (2d ed. 1990).

■ As noted above, the FTCA provides that the federal government shall be liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In determining the manner and extent to which the United States would be liable, "the law of the place the act or omission occurred" must be applied. 28 U.S.C. § 1346(b); *Soto v. United States*, 11 F.3d 15, 17 (1st Cir.1993). Therefore, Rhode Island tort law governs the present dispute.

■ Under Rhode Island law, a private landowner owes a duty of reasonable care to all persons lawfully on the premises. *See Ferreira v. Strack*, 636 A.2d 682, 685 (R.I. 1994). A landowner is in breach of this duty if she knows or should know of an unsafe condition on her property to which those lawfully on the premises might be exposed, but fails to act in a reasonable manner with respect to this condition—i.e., if she fails to remedy or warn of this condition. *See Piascik v. Shepard Co.*, 374 A.2d 795, 796 (R.I. 1977).

■ Therefore, the government as landowner (and its employees) owed plaintiffs a duty of reasonable care while they were at the Pastore Building. The facts alleged by plaintiffs could allow a reasonable person to infer that this duty was breached by federal employees, and that plaintiffs were injured on account of this breach. Specifically, plaintiffs maintain that: (1) a federal employee placed the flashing over the threshold and failed to secure it properly; (2) Officer Rocha was aware of the condition and failed to respond appropriately; and (3) the building manager knew or should have known that the lighting was poor but failed to correct the problem. Taking these allegations to be true, as the Court must for the purposes of deciding this motion, the complaint states a negligence claim against government employees. Moreover, as Rhode Island recognizes the doctrine of *respondeat superior*, the complaint also states a claim against the federal government based upon negligent acts of employees acting within the scope of their employment. *See Vargas Mfg. Co. v. Friedman*, 661 A.2d 48, 53 (R.I.1995) (discussing vicarious liability of employers).

For these reasons, the Court is satisfied that the complaint states a claim upon which relief may be granted against the United States. Therefore, the government's motion to dismiss pursuant to Rule 12(b)(6) is denied.[10]

## C. Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

On a motion for summary judgment, the Court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). "Summary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991). At this stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987).

 Generally, a negligence claim is not grist for the summary judgment mill, and this case is no exception. The affidavits, depositions, and other matters presented to the Court indicate that there are factual questions in this case which a trier of fact must untangle. There is contradictory testimony about who placed the offending piece of metal flashing over the threshold in the first place, as both Arpin and the United States have denied that one of their employees did so. Further, while Officer Rocha stated on deposition that he does not recall seeing the flashing prior to the accident, in her affidavit Goncalves relates a conversation she had with Rocha immediately after the accident which suggests his prior awareness of the dangerous condition. Finally, the parties' answers to interrogatories create a dispute concerning the adequacy of the lighting in the entranceway. All of the above suggest genuine questions for the fact-finder to resolve, precluding summary judgment at this time.

 Accordingly, this matter must proceed to trial on the issue of the government's liability for injuries sustained on account of the negligence of federal employees. In order to recover against the United States, plaintiffs will have to prove by a fair preponderance of the evidence that (1) a federal employee negligently created a condition which caused the accident, or (2) a federal employee knew or should have known of such a dangerous condition—such as the raised metal flashing or inadequate lighting—and failed to act in a reasonable manner with respect to this condition which thus caused the accident.

## III. Conclusion

For the foregoing reasons, the motions of the United States to dismiss for lack of subject matter jurisdiction, to dismiss for failure to state a claim, and for summary judgment all are denied.

It is so ordered.

---

10. While the parties have not raised the issue, Goncalves' loss of consortium claim presents an interesting legal question: whether such a cause of action exists in favor of one spouse where, as here, the injury to the other spouse occurred prior to the marriage. The Rhode Island Supreme Court has yet to address this issue, and the decisions from other jurisdictions are split. *Compare Walsh v. Armstrong World Indus., Inc.*, 700 F.Supp. 783, 784–85 (S.D.N.Y.1988) (no cause of action under New York law) *and Gurliacci v. Mayer*, 218 Conn. 531, 590 A.2d 914, 931–32 (1991) (same under Connecticut law) *with Bulloch v. United States*, 487 F.Supp. 1078, 1087 (D.N.J.1980) (cause of action available under New Jersey law for engaged but unmarried cohabitant). This Court will not offer an opinion as to how the Rhode Island Supreme Court might decide this issue at this time.