John BURNS, et al., Plaintiffs,

v.

TOWN OF LAMOINE et al., Defendants.

No. Civ. 98–153–B.

United States District Court, D. Maine.

March 11, 1999.

John & Anita Burns, Noth Reading, MA, pro se.

Mark V. Franco, Thompson & Bowie, Portland, ME, for defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiffs John and Anita Burns ("Plaintiffs"), proceeding pro se, bring this procedural due process claim against Defendants Town of Lamoine ("the Town"), John Fink ("Fink"), and Sally Bell ("Bell"). Plaintiffs allege that Defendants' revocation of their plumbing permit without a pre-deprivation hearing violated their Fifth and Fourteenth Amendment rights and seek either reissuance of the permit or damages in the amount of $500,000.00. Before the Court is Defendants' Motion for Summary Judgment. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affadavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

Plaintiffs reside in North Reading, Massachusetts and own a three-acre parcel of land in Lamoine, Maine. Plaintiffs bought the property in September of 1986 for $12,600.00, intending to use it as a camp. At the time of purchase, the previous owner told Plaintiffs that the property had failed a site evaluation soils test and therefore could not support a septic system.

In the summer of 1991, Plaintiffs contacted a contractor about installing a septic system on the property. On July 18, 1991, a licensed site evaluator, Teresa Davis ("Davis"), conducted a site evaluation to determine whether the soils on Plaintiffs' property were suitable for a septic system under the Maine Subsurface Wastewater Disposal Rules, 144A C.M.R. Ch. 241 ("the Rules"). Davis certified that, contrary to what Plaintiffs had been told by the previous owner, the proposed septic system was in accordance with the Rules.

At this time, Fink and Bell were the Town's local plumbing inspectors, whose authority to issue permits was governed by state law. On July 23, 1991, Fink received Plaintiffs' application for a plumbing permit, which incorporated Davis's certification, and issued a plumbing permit to Plaintiffs that same day.

On August 5, 1991, another site evaluation was conducted on Plaintiffs' property, this time headed by Jay Hardcastle ("Hardcastle") of the State of Maine Department of Human Services' ("DHS") Division of Health Engineering. Four people were in attendance: Hardcastle, Davis, Fink, and David Roque ("Roque"), a State Soil Scientist. Plaintiffs were not informed of the second site evaluation until

after it was concluded, and allege that it was initiated illegally after someone involved in the initial application process notified DHS that Plaintiffs had been issued a plumbing permit. Defendants do not address what prompted the second inspection.

After completing the second site evaluation, Hardcastle and Davis agreed that the soils on Plaintiffs' property could not support a septic system.[1] Hardcastle then instructed Fink to revoke Plaintiffs' plumbing permit.[2] On August 6, 1991, Davis sent a letter to Plaintiffs explaining that she had "made a terrible and grave mistake in calling soils on your lot ... suitable for septic system disposal" and stating that "the plumbing inspectors, Sally Bell and John Fink, have no choice but to revoke the plumbing permit based on my wrongful soils report." (Defs.' Ex. F.) On August 7, 1991, Fink sent a letter to Plaintiffs informing them of the revocation.

Plaintiffs did not request a hearing from the Town to appeal the revocation. Indeed, Defendants assert that in August of 1991, the Town did not have an appeals process through which individuals could appeal the revocation of plumbing permits.[3] Defendants do claim, however, that individuals wishing to challenge a plumbing permit revocation at that time could have utilized state appeals processes.[4]

At Plaintiffs' request, a soil scientist, Albert Frick ("Frick"), conducted another site evaluation of Plaintiffs' property in the fall of 1992. Frick proposed an experimental system for Plaintiffs' property, and submitted a plumbing permit application on Plaintiffs' behalf on September 4, 1992. He retracted the application, however, less than one month later.

Almost two years later, at Plaintiffs' request, a licensed site evaluator, Joan Brooks ("Brooks"), conducted the fourth site evaluation of Plaintiffs' property during their period of ownership. She concluded that the property was suitable for a septic system under the Rules and submitted a plumbing permit application on Plaintiffs' behalf to DHS around August 12, 1994.[5] Upon DHS's receipt of the application, Eugene Moreau, Manager of DHS's Community Health Program, sent a letter to Bell requesting that the Town refrain from issuing a plumbing permit to Plaintiffs pending further review by his office. Around the same time, Hardcastle, who lead the DHS site evaluation in 1991, contacted Brooks to express his concerns about the property. (Defs.' Ex. O.) Brooks revisited Plaintiffs' property on August 27, 1994, and determined that the property in fact was not suitable for a septic system. She immediately withdrew her application.

Plaintiffs requested a fair hearing with DHS's Office of Administrative Hearings, and a hearing was held on November 30, 1994 before Chief Administrative Hearing Officer Meris Bickford ("Bickford").[6] At

---

1. Plaintiffs concede that Roque was present at the second site evaluation, but dispute that he actually participated in the assessment.

2. On August 27, 1991, Bell received a letter from Hardcastle confirming this instruction.

3. Plaintiffs dispute that the Town had no appeals process in 1991 based on the existence of a Board of Appeals before which Plaintiffs appeared once in 1990 for the purpose of obtaining a variance. It is unclear, however, whether Plaintiffs thought that the Town's Board of Appeals was an appropriate and available forum at the time in question.

4. Defendants do not specify the relevant state appeals processes.

5. Plaintiffs assert that Brooks violated protocol by sending the application to DHS instead of to Fink or Bell, and that this deviation is evidence of DHS's infiltration of the application process. According to Plaintiffs, at the time in question, plumbing permit applications certified by licensed site evaluators were required to be reviewed only by a local plumbing inspector, unless a variance was requested, in which case DHS also had to review the application. No variance ever was requested in Plaintiffs' case. (Burns Dep. at 92–94.)

6. The hearing was authorized under the Maine Administrative Procedure Act, Me.Rev. Stat.Ann. tit. 5, §§ 9051–9064.

issue was whether DHS was correct in deciding that Plaintiffs' property did not satisfy the Rules, rather than whether the Town, Fink, or Bell properly revoked Plaintiffs' plumbing permit. Bickford issued a Recommended Decision on January 10, 1995. She concluded that DHS correctly determined that Plaintiffs' property was not in compliance with the Rules, but also recommended that DHS finance the administration of an independent and definitive site evaluation of Plaintiffs' property by an evaluator of Plaintiffs' choice. DHS Commissioner Kevin Concannon ("Concannon") adopted Bickford's Recommended Decision in a Final Decision on March 28, 1995, but amended it to require that he would select the independent soil evaluator at random. Plaintiffs had notice that they could appeal this Final Decision, but did not do so.

Concannon selected site evaluator Jane Magiera ("Magiera") to analyze the soils on Plaintiffs' property. Magiera conducted her inspection on October 31, 1995, and concluded that the property could not support a septic system under the Rules. Upon receiving Magiera's report to this effect, W. Clough Toppan ("Toppan"), Director of DHS's Division of Health Engineering, advised Plaintiffs in a November 30, 1995 letter that their property could not be developed under current state law.

Plaintiffs requested that DHS reconsider its position and a hearing was held on September 19, 1996, before Bickford. The only issue for evaluation was DHS's most recent determination, based on Magiera's findings, that the property could not support a septic system under the Rules. On November 5, 1996, Bickford issued a Recommended Decision concluding that DHS acted correctly in arriving at that determination. Concannon adopted the Recommended Decision in a Final Decision on December 11, 1996.

Plaintiffs filed a Petition for Review of Final Agency Action on January 9, 1997, and filed an Amended Petition on September 17, 1997. The Superior Court denied Plaintiffs' appeal on June 12, 1998. Plaintiffs filed a Notice of Appeal to the Law Court, but later withdrew their appeal. Plaintiffs filed this federal suit on July 23, 1998, alleging that the Town, Fink, and Bell violated their Fifth and Fourteenth Amendment rights when they revoked Plaintiffs' plumbing permit in August of 1991 without a pre-revocation hearing. Neither DHS nor the state of Maine is a defendant in this lawsuit.

### III. DISCUSSION

Defendants advance three arguments in support of their Motion for Summary Judgment. First, Defendants argue that this Court lacks jurisdiction because Plaintiffs cannot satisfy the diversity jurisdiction amount in controversy requirement. Second, Defendants contend that Plaintiffs' claim is barred by the statute of limitations. Third, Defendants assert that Plaintiffs' procedural due process claim must fail because they did not have a property interest in the plumbing permit and because they had access to and availed themselves of adequate postdeprivation remedies. The Court will consider each argument in turn.

### 1. Jurisdiction

Plaintiffs' Complaint is most appropriately characterized as asserting a claim under 42 U.S.C. § 1983 ("Section 1983"). In the Complaint, Plaintiffs state that this Court has jurisdiction under 42 U.S.C. § 1332, the diversity jurisdiction statute, and allege damages in the amount of $500,-000.00. Defendants concede that the parties are diverse from one another, but dispute that the amount in controversy exceeds $75,000.00.

█ Regardless of whether diversity jurisdiction exists, the Court has federal question jurisdiction over this claim pursuant to 28 U.S.C. § 1331, which permits federal courts to hear actions "arising under" the United States Constitution or fed-

eral law.[7] 28 U.S.C. § 1331 (1994). Plaintiffs clearly allege in their Complaint that the circumstances surrounding the revocation of their plumbing permit constituted a constitutional due process violation.

While Defendants contend that Plaintiffs' Complaint does not satisfy Fed. R.Civ.Proc. 8(a)'s mandate that pleadings "contain . . . a short and plain statement of the grounds upon which the Court's jurisdiction depends . . . .," the Court does not find this argument persuasive given the circumstances of this case. The First Circuit has acknowledged that "federal subject matter jurisdiction may be established by a complete reading of a complaint, 'even though the jurisdiction expressly asserted was improper.' " *Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 15 (1st Cir.1990) (quoting *Massachusetts v. United States Veterans Admin.,* 541 F.2d 119, 122 (1st Cir.1976)). Moreover, pro se pleadings generally are subject to liberal construction. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Simmons v. Dickhaut,* 804 F.2d 182, 183 (1st Cir.1986); *see also Fagone v. Fagone,* 648 F.Supp. 488, 489 n. 1 (D.Me.1986) ("Plaintiff does not specifically allege a basis for jurisdiction, but because he is a pro se plaintiff, whose pleadings should be viewed with indulgence, this Court has examined whether either federal question or diversity jurisdiction might exist.") (internal citations omitted). In light of these considerations, the Court concludes that Plaintiffs' Complaint sufficiently alleges a basis for this Court's federal question jurisdiction.

## 2. Statute of Limitations

The Court next must consider whether Plaintiffs' claim is time-barred.

In the Section 1983 context, federal law determines the date that a cause of action accrues, while state law determines the applicable statute of limitations and tolling doctrine. *See Rivera–Ramos v. Roman,* 156 F.3d 276, 282 (1st Cir.1998). The statute of limitations for Section 1983 cases in Maine is six years. *See Small v. City of Belfast,* 796 F.2d 544, 546 (1st Cir.1986) (holding that Maine six-year statute of limitations for personal injury actions applies to Section 1983 claims). Two issues are presented in this case: (i) when Plaintiffs' cause of action accrued, and (ii) whether the statute of limitations was tolled.

A Section 1983 claim is deemed to have accrued "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Torres v. Superintendent of Police,* 893 F.2d 404, 407 (1st Cir.1990). It is undisputed that Plaintiffs learned of their injury on August 7, 1991, when they received notice of the revocation from Fink. Plaintiffs contend, however, that their cause of action did not accrue until September 19, 1996, when they allegedly first "discovered" that they could pursue a federal action against Defendants.[8] Their argument apparently is premised on the "discovery rule" doctrine, which adjusts the accrual date for a cause of action where a plaintiff, exercising reasonable diligence, could not have known of his injury. *See Madison v. St. Joseph Hosp.,* 949 F.Supp. 953, 957 n. 7 (D.N.H. 1996). This concept, however, is inapposite in this case. There is no federal accrual doctrine or "discovery rule" that tolls the statute of limitations where a plaintiff was aware of his injury, but unaware of a potential legal theory. A plaintiff's unfa-

---

7. In addition, on at least one occasion, the First Circuit has stated that jurisdiction over Section 1983 claims exists pursuant to 28 U.S.C. § 1343(a)(3). *See Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 14 (1st Cir.1990) ("Federal jurisdiction over section 1983 claims is provided for by 28 U.S.C. § 1343(a)(3).").

8. Plaintiffs allegedly learned of this possibility at the second administrative hearing, during which Plaintiffs had access to a memo from Bickford to an Assistant Attorney General suggesting that Plaintiffs might have a cause of action against Defendants. (Pls.' Ex. 7.)

Plaintiffs also note that they consulted with attorneys in the fall of 1991 and were advised that they had no legal recourse.

miliarity with possible legal recourse will not toll the statute of limitations. *See United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment."). Since Plaintiffs had notice of the revocation on August 7, 1991, the Court concludes that their cause of action accrued on that date.

 Plaintiffs filed this lawsuit on July 23, 1998, six years and eleven months after their cause of action accrued. Defendants argue that Plaintiffs' Complaint was untimely because the statute of limitations expired on or about August 6, 1997. Plaintiffs respond that their claim is not time-barred because the statute of limitations did not begin to run until they exhausted available state administrative remedies, but this argument is without merit. There is no dispute that, beginning in 1994, Plaintiffs requested and participated in two DHS administrative hearings, and that they appealed one of the DHS Final Decisions to the Superior Court.[9] It is also true that some federal statutes contain exhaustion provisions that prohibit the commencement of a federal action until specified state proceedings are concluded. *See, e.g.,* Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5(f)(1) (1994). It is well-settled, however, that with only limited exceptions, none of which apply in this case, a plaintiff is not required to exhaust state administrative remedies as a prerequisite to bringing a Section 1983 action.[10] *See Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Thus, no federal statutory exhaustion requirement is implicated in this case.

As noted above, in the absence of a federal exhaustion mandate, any tolling of the statute of limitations is governed by state law. The Court cannot identify any Maine law, statutory or otherwise, providing that the statute of limitations is tolled during the pendency of related but independent state administrative proceedings. *Cf. Benitez–Pons v. Puerto Rico,* 136 F.3d 54, 59 (1st Cir.1998) (noting that Puerto Rico statute tolls statute of limitations where litigant pursues "extrajudicial claim[ ]"); *Torres v. Superintendent of*

9. The Court observes that Plaintiffs challenged DHS's actions, as opposed to Defendants', at the administrative appeal level. It is unclear whether Plaintiffs could have pursued an administrative appeal against Defendants.

10. This is not to say that a plaintiff's pursuit of state administrative remedies is wholly irrelevant to a Section 1983 claim. Indeed, where a plaintiff alleges that he was unconstitutionally deprived of property as a result of a state actor's random and unauthorized departure from established state procedure, courts may evaluate whether available state postdeprivation remedies provided adequate due process. *See Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (noting that random nature of state actor's departure made it not "practicable for the State to provide a predeprivation hearing"), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending *Parratt* to intentional deprivations by state actors). In other words, in some cases, where postdeprivation process is adequate under the Due Process Clause, the existence of the postdeprivation process vitiates any constitutional violation. This creates a seeming paradox, since a plaintiff seeking relief under Section 1983 is not required to exhaust state remedies, and yet that plaintiff's procedural due process claim may be dismissed if he has not made use of available and adequate state remedies. The tension can be resolved, however: "[w]hen [a] procedural due process claim is rejected ... because of the availability of an adequate state ... remedy, the claim is defeated on the merits rather than for failure to exhaust state remedies." Martin A. Schwartz, *The Preiser Puzzle: Continued Frustrating Conflict Between the Civil Rights and Habeus Corpus Remedies for State Prisoners,* DePaul L.Rev., Winter 1988, at 85, 101. *Parratt, Hudson,* and their progeny merely reflect that, exhaustion aside, a procedural due process claim may fail where the available state remedies provide all the process that was due. *See Daniels v. Williams,* 720 F.2d 792, 794 n. 1 (4th Cir.1983), *aff'd* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

*Police,* 893 F.2d 404, 407 (1st Cir.1990) (same). As a result, Plaintiffs' pursuit of state administrative remedies did not serve to toll the statute of limitations applicable to their Section 1983 claim.

In addition, neither federal nor state equitable tolling (fraudulent concealment) doctrine is appropriate in this case because Plaintiffs have not alleged excusable ignorance caused by misconduct or concealment on the part of Defendants. *See Benitez–Pons,* 136 F.3d at 61; *Torres Ramirez v. Bermudez Garcia,* 898 F.2d 224, 229–30 (1st Cir.1990); *Madison v. St. Joseph Hosp.,* 949 F.Supp. 953, 957 n. 7 (D.N.H.1996). As no federal or state tolling doctrine is triggered in this case, Plaintiffs' failure to file a complaint by August 6, 1997, renders their claim time-barred.

Since the Court concludes that Plaintiffs' claim is barred by the statute of limitations, it need not address Defendants' third argument in support of their Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.

*SO ORDERED.*