**Thomas DUGAN and Karen Dugan, Plaintiffs,**

v.

**COASTAL INDUSTRIES, INC. and United States of America, Defendants.**

**No. CIV. A. 99–3080.**

United States District Court, E.D. Pennsylvania.

May 2, 2000.

Jeffrey S. Pearson, Norristown, PA, for Plaintiffs.

Susan Shinkman, U.S. Attorney's Office, Philadelphia, PA, for Defendants.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Plaintiff Thomas Dugan ("Dugan") avers that he slipped and fell due to an accumulation of water on a floor in the Sparkman Building at the United States Army Missile Command, Redstone Arsenal, Alabama. Dugan claims to have suffered serious injuries to his knee and consequent loss of wages, pain, and suffering. Dugan brought this action under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., alleging that the negligence and recklessness of defendants United States of America ("United States" and "government") and Coastal Industries, Inc. ("Coastal"), caused his injuries. The complaint also includes a

claim for loss of consortium by Dugan's wife, plaintiff Karen Dugan.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b).

## I. Thomas Dugan's Claim

 The United States moves to dismiss Dugan's first claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this Court lacks subject matter jurisdiction over the claim. A motion under Rule 12(b)(1) may take the form of either a factual or a facial challenge to subject matter jurisdiction. *See Singer v. Commissioner of Internal Revenue Service,* 2000 WL 14874 at 1 (E.D.Pa. Jan. 10, 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)); *Gould Electronics, Inc. v. United States,* 1999 WL 817729 at 1 (E.D.Pa. Oct. 12, 1999) (citing *Mortensen,* 549 F.2d at 891). Where, as here, there is a factual challenge to subject matter jurisdiction, the court is "not confined to allegations in the plaintiff's complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997) (citing *Mortensen,* 549 F.2d at 891–92). It is appropriate to decide a factual motion to dismiss based on an exception in the Federal Tort Claims Act under Rule 12(b)(1). *See id.* (addressing a motion to dismiss based on the FTCA's "discretionary function" exception).

 "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991) (citing *Mortensen,* 549 F.2d at 891); *see also Development Fin. Corp. v. Alpha Housing & Health Care,* 54 F.3d 156, 158 (3d Cir.1995). However, plaintiff's burden is light;[1] dismissal for lack of

---

1. Plaintiff's burden on a Rule 12(b)(1) factual challenge to jurisdiction is lower than the burden on a Rule 12(b)(6) motion for failure to state a claim. *See Gould,* 1999 WL 817729 at 1 (citing *Growth Horizons, Inc., v. Delaware Cty., Pa.,* 983 F.2d 1277, 1280–81 (3d Cir. 1993)).

jurisdiction is only appropriate where the right claimed "is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons, Inc., v. Delaware Cty., Pa.*, 983 F.2d 1277, 1280–81 (3d Cir. 1993) (quoting *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974))). The Court must be careful, however, not to allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly in its consideration of the facts concerning jurisdiction. *See Growth Horizons*, 983 F.2d at 1281 n. 5 (citing *Kulick*, 816 F.2d at 897; *Mortensen*, 549 F.2d at 891).

The Federal Tort Claims Act sets forth the limited circumstances under which the United States waives its sovereign immunity from suit in federal court, and establishes certain exceptions to that waiver. *See Gotha*, 115 F.3d at 179. This case involves one of those exceptions: the "independent contractor exception."

The independent contractor exception does not appear in the "exceptions" section of the FTCA, 28 U.S.C. § 2680, but has evolved from the FTCA provision that restricts recovery to injuries arising out of the acts and omissions of government employees and, according to the Supreme Court, excludes injuries caused by independent contractors. 28 U.S.C. § 1346(b). Drawing on agency concepts, the Supreme Court has held that the independent contractor exception turns on whether the United States "control[s] the physical conduct of the contractor in performance of the contract." *Logue v. United States*, 412 U.S. 521, 527, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). In other words, "the question here is ... whether [the contractor's] day-to-day operations are supervised by the Federal Government." *United States v. Orleans*, 425 U.S. 807, 815, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976).

Courts in this circuit have addressed the FTCA's independent contractor exception in a number of slip-and-fall actions. In those cases, the courts have looked to the contract between the United States and the contractor to determine whether the United States exercised day-to-day supervision over the work of the contractor. In *Norman v. United States*, 111 F.3d 356 (3d Cir.1997), which involved a slip and fall in this very Courthouse, the Court of Appeals for the Third Circuit held that the independent contractor exception applied because the contract gave the contractor "broad responsibilities for daily maintenance," required the contractor to maintain an on-site supervisor, and stated explicitly that government officers were not to supervise contractor employees. *See id.*, at 357. In *Young v. Marriott Intern., Inc.*, 1997 WL 700493 (E.D.Pa. 1997), a case involving a slip and fall in a federal building cafeteria managed by Marriott International, Inc., the court found that the contract "specifically stated that Marriott was responsible for spillage clean up and for preventing any hazardous or dangerous conditions in the cafeteria," and thus the independent contractor exception applied. *See id.* at 2. *Brookins v. United States of America*, 722 F.Supp. 1214 (E.D.Pa.1989) involved a plaintiff who fell down the stairs of a building owned by the U.S. Department of Housing and Urban Development. The government's contract with the maintenance company in *Brookins* provided that "the Contractor shall be responsible for the actions and omissions of such employees in the performance of the contract," and the court therefore concluded that the independent contractor exception was applicable. *See id.* at 1218.

The United States argues that the independent contractor exception applies in this case. While the contract in this case does, as did the contract in *Norman*, grant broad responsibilities for the maintenance of buildings, (United States of America's Memorandum of Law in Support of Motion to Dismiss, Exh. 1, Coastal Industries Contract, Att. 01, § 1.1) ("Coastal Con-

tract"), and require the contractor to provide on-site supervision of its employees, (Coastal Contract, at § 1.2),[2] the contract in this case is missing the most persuasive contract language in *Norman, Young,* and *Brookins.* The contract does not explicitly state that government officers shall never exercise supervision over contractors employees, as in *Norman;* does not explicitly or implicitly hold Coastal responsible for cleaning up spills, as in *Young;* and does not state that only Coastal will be held liable for the acts and omissions of its employees, as in *Brookins.* The silence of the Coastal Contract in this regard is deafening.[3]

The contract between the United States and Coastal contains specific language delegating to Coastal duties that require inspection, monitoring and resolution, such as the responsibility to patrol for trash (Coastal Contract, at § 8.9); inspect and replace all building lights (Coast Contract, at § 8.10), and remove ice and snow (Coastal Contract, at § 8.13). It also requires that areas where Coastal employees are working, including wet floors, be marked with warning signs (Coastal Contract, at § 8.5), and that material used by contractors "shall be picked up and work areas kept free from tripping hazards" (Coastal Contract, at § 8.6). Yet despite this remarkable specificity as to the inspection duties of Coastal, the contract nowhere delegates to Coastal or mentions the duty to inspect for or clean up spills, wet spots, or other hazards inside buildings. Invoking the venerable interpretive canon *inclusio unius est exclusio alterius* (the inclusion of one thing suggests the exclusion of all others) seems appropriate here; the inclusion of such detailed inspec-

tion and safety-related delegations suggests that the contract should be read to exclude other similar delegations not included therein. The drafters of the Coastal Contract were clearly concerned with safety and delegated in detailed fashion numerous safety-related duties, yet chose not to delegate to Coastal the readily apparent responsibility for monitoring and cleaning up spills and wet spots.

In addition, the contract places the responsibility with *the government* for identifying and notifying the contractor of the need for "emergency services," which are defined as "any situation which may endanger health [sic] of individuals." (Coastal Contract, at § 8.11). A spill on a floor certainly meets this definition. Even if a spill could not be considered an emergency, the contract further places the responsibility with the government to ask the contractor to "perform special cleaning duties (i.e., clean an unoccupied building for occupancy, etc.)." (Coastal Contract, at § 8.12). The implication of these provisions is that the responsibility lies with the government to require the contractor to perform any *ad hoc* duties not specifically delegated to Coastal in the contract, such as cleaning up spills and water accumulations.

 On the face of the contract, the responsibility for inspecting for and supervising the clean-up of spills and wet spots in buildings at the United States Army Missile Command, Redstone Arsenal, Alabama, lay with the United States. Thus, the United States supervised the day-to-day operations of Coastal in this respect, and the independent contractor exception of the FTCA does not apply to Dugan's

**2.** The United States points to the cleaning responsibilities set forth in the Coastal Contract, § 7.1.1, which include sweeping, mopping, scrubbing, stripping, and waxing. While these requirements might give Coastal the responsibility for regular floor maintenance, they make no reference to the responsibility to inspect and address spills.

**3.** Likewise, the instant contract is distinguishable from the contract in *Williams v. United*

*States,* 50 F.3d 299 (4th Cir.1995), which charged the maintenance company with "maintaining the Premises with respect to repair, cleanliness and safety," and keeping the lobby floors free of trash and slip resistant. *Id.* at 302. The Coastal Contract contained no such language; it did not charge Coastal with broad safety responsibilities, and made no mention of inspecting floors and keeping them clear of debris and other matter that could cause a person to slip and fall.

claim. As the case proceeds, evidence may come to light that alters this conclusion, but I cannot conclude on the evidence now before me that Dugan's claim "is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons,* 983 F.2d at 1280–81.

## II. Karen Dugan's Claim

■ The United States also moves to dismiss Count II of plaintiffs' complaint, Karen Dugan's claim for loss of consortium, on the basis of Rule 12(b)(1). The United States argues that this court lacks subject matter jurisdiction because Karen Dugan failed to comply with the exhaustion requirements in 28 U.S.C. § 2675(a) by first bringing her claim before the an agency of the United States within the two-year limitations period set forth under the FTCA in 28 U.S.C. § 2401(b). "A district court may rule on a Rule 12(b)(1) motion when on the face of the pleadings it is clear that administrative remedies have not been exhausted...." *Robinson v. Dalton,* 107 F.3d 1018, 1022 (3d Cir.1997).[4]

The pleadings state that *"plaintiffs'* administrative claim was denied by the appropriate administrative agency on or about March 3, 1999 ..." [emphasis added to plural possessive], Complaint, at ¶ 6, implying that the claims of both Karen Dugan and Thomas Dugan were heard in an administrative proceeding. However, following the above allegation, was a citation to an attached administrative notice of denial, which refers only to Thomas Dugan and only to alleged "personal injuries," suffered by him. The notice of denial makes no mention of Karen Dugan, nor does it refer to a claim for loss of consortium.[5] The detailed analysis set forth in the notice of denial refers only to a negligence claim and discusses only the investigation into Thomas Dugan's slip and fall.

In short, it is clear from the face of the pleadings that Karen Dugan never filed an administrative claim as required by § 2675, and thus did not exhaust her claim prior to filing this lawsuit. For that reason, this court has no subject matter jurisdiction over her claim, and her claim will be dismissed pursuant to Rule 12(b)(1). *See Yillah v. United States,* 1998 WL 661545 at 2 (E.D.Pa. Sept. 24, 1998) (dis-

---

4. The Court of Appeals recently held that a district court erred in deciding an exhaustion defense under Rule 12(b)(1), stating that "[f]ailure to exhaust is 'in the nature of statutes of limitation' and 'does not affect the District Court's subject matter jurisdiction.'" *Anjelino v. The New York Times Co.,* 200 F.3d 73, 87 (3d. Cir.1999) (quoting *Hornsby v. United States Postal Service,* 787 F.2d 87, 89 (3d Cir.1986)); *see also Hager v. NationsBank, N.A.,* 167 F.3d 245, 248 n. 3 (5th Cir.1999) (citing *Painter v. Golden Rule Ins. Co.,* 121 F.3d 436, 441 (8th Cir.1997), *cert. denied,* 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998;) *Chailland v. Brown & Root, Inc.,* 45 F.3d 947, 950 n. 6 (5th Cir.1995)). The court of appeals held that the district court should have analyzed exhaustion under a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Anjelino,* 200 F.3d at 87; *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360, at 433 (2d ed. 1990) ("Rule 12(b)(6) also has been used to make a motion to dismiss because of a plaintiff's failure to exhaust administrative remedies ...." (footnote omitted)). However, in *Anjelino,* the failure to exhaust

administrative claims was not clear from the face of the parties' pleadings, and the court based its conclusion in part on the uniqueness of Title VII, *Anjelino,* 200 F.3d at 87, which is not at issue here. Furthermore, the court in *Anjelino* relied on *Robinson* for a different proposition and did not directly overrule *Robinson's* holding that a claim may be dismissed under Rule 12(b)(1) for failure to exhaust in certain circumstances, and thus I believe *Robinson* remains good law in the wake of *Anjelino.*

5. Even if Karen Dugan's claim had been included in Thomas Dugan's claim, "[t]he administrative procedures outlined in 28 U.S.C. § 2675(a) must be pursued separately with respect to each claim in order for this Court to have subject matter jurisdiction over the claim." *Yillah v. United States,* 1998 WL 661545 at 4 (E.D.Pa. 1998) (citing *McDevitt v. United States Postal Serv.,* 963 F.Supp. 482, 484 (E.D.Pa.1997)); *Ferguson v. United States,* 793 F.Supp. 107, 110 (E.D.Pa.1992); *Murray v. United States,* 604 F.Supp. 444, 446 (E.D.Pa.1985).

missing wife's loss of consortium claim under the FTCA for failure to file administrative claim); *Schwartzman v. Carmen*, 995 F.Supp. 574, 576–77 (E.D.Pa.1998) (same); *Klimaszewski v. United States*, 1997 WL 177792 at 1 (E.D.Pa. 1997) ("If a spouse wants to sue the United States for her loss of consortium, she must follow the procedures delineated in the FTCA.").

An appropriate Order follows.

### ORDER

**AND NOW,** this 2nd day of May, 2000, upon consideration of the motion of the United States of America to dismiss plaintiffs' claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and having found and concluded on the basis of the record presently before the Court, for the reasons set forth in the accompanying memorandum, that this Court has subject matter jurisdiction over plaintiff Thomas Dugan's Count I negligence claim because the independent contractor exception to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, does not apply, and that subject matter jurisdiction is lacking over plaintiff Karen Dugan's Count II loss of consortium claim because it is clear from the face of the pleadings that Karen Dugan did not exhaust her administrative remedies under 28 U.S.C. § 2675(a), it is **HEREBY ORDERED** that

(1) the motion of the United States of America to dismiss Count I of the complaint of plaintiffs Thomas Dugan and Karen Dugan is **DENIED**; and

(2) the motion of the United States of America to dismiss Count II of the complaint of plaintiffs Thomas Dugan and Karen Dugan is **GRANTED,** and Count II is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the United States of America shall file an answer and any other necessary pleading other than a motion to dismiss no later than Monday, May 29, 2000.