Philip & Quiana SMITH, Plaintiffs,

v.

Randy STEFFENS, et al., Defendants.

Civil Action No. 05–4434.

United States District Court, E.D. Pennsylvania.

April 26, 2006.

Gerald Jay Pomerantz, Pomerantz & Scheffer, Philadelphia, PA, Norman Perlberger, Pomerantz & Perlberger LLP, Philadelphia, PA, for Plaintiffs.

Eugene J. Maginnis, Jr., Dugan Brinkmann Maginnis & Page, John M. Defeo, Snyder & D'Annunzio, Christopher B. Sessa, Leeds Winicov & Sessa, Christopher A. Day, U.S. Attorney's Office, Philadelphia, PA, William F. Thomson, Jr., Gilbert and Thomson Law Offices, Fairless Hills, PA, Michael V. Desantis, Kaufman, Schneider & Bianco, LLP, Jericho, NY, Philip R. Voluck, Kaufman, Schneider & Bianco, LLP, Plymouth Meeting, PA, for Defendants.

## *MEMORANDUM*

KATZ, Senior District Judge.

### I. FACTS

On January 24, 2006, Plaintiffs were injured when the basement steps of 1402 Englewood Street, Philadelphia, Pennsylvania, collapsed while they were viewing the home as prospective buyers. Plaintiffs originally filed suit in the Court of Common Pleas in Philadelphia, Pennsylvania. The case was subsequently removed to this court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1442 after Defendant Century 21 Advantage Gold added the Department of Housing and Urban Development ("HUD") as an additional Defendant for contribution and indemnity.

HUD was the owner of the property at the time of the accident. Effective February 1, 2001, HUD entered into a marketing and management contract with Golden Feather Realty Services Inc. ("Golden Feather") to manage, market and oversee the sales closing activity for the house located at 1402 Englewood Street. The United States now challenges the court's subject matter jurisdiction over this case through a 12(b)(1) motion.

### II. DISCUSSION

#### A. Standard

■ The United States Government's 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact. When deciding a factual 12(b)(1) motion, the trial court is free to weigh the evidence and satisfy itself as to the existence of its

power to hear the case. *Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)(discussing the difference between 12(b)(1) motions which attack the complaint on its face and those that attack the existence of subject matter jurisdiction in fact). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

**B. Independent Contractor Status**

■ The tort liability of the United States rests entirely upon the express waiver of sovereign immunity under the Federal Tort Claims Act ("FTCA"). *Norman v. United States,* No. CIV. A. 95–4111, 1996 WL 377136, *2 (E.D.Pa. July 3, 1996) (citing 28 U.S.C. §§ 1346(b), 2671–2680), *aff'd,* 111 F.3d 356 (3d Cir.1997). "The FTCA only applies to acts of federal employees and explicitly excludes liability for the acts of independent government contractors." *Id.* Thus, if Golden Feather is an independent contractor responsible for maintaining the house in a safe condition, the United States cannot be held liable.

**1. Government Control**

■ Golden Feather is an independent contractor. The critical factor used to distinguish a federal agency employee from an independent contractor is whether the government has the power "to control the detailed physical performance of the contractor." *Norman v. United States,* 111 F.3d 356, 357–358 (3d Cir.1997) (holding that United States could not be held liable for contractor that had "broad responsibilities for daily maintenance" under the inde-

pendent contractor exception)(internal citations omitted); see *also Balkonis v. United States,* No. CIV. A. 01–5541, 2002 WL 32348285, *3 (E.D.Pa. Aug. 14, 2002)(holding that management company hired by HUD to manage and market a property was an independent contractor). "[T]he question here is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (citing *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973)).

In this case, Golden Feather, not the United States, had broad authority to control the detailed physical performance of the contract. The very purpose of this management contract was to turn over the day-to-day management of the property. *See Tisdale v. United States,* 62 F.3d 1367, 1371 (11th Cir.1995)(holding that management company was an independent contractor, "because the very purpose of a HUD Management contract is to turn over the day-to-day management, rehabilitation, and supervision of certain properties" to management companies). HUD delegated the responsibility to Golden Feather to supervise the daily management and marketing of the properties under the contract as demonstrated by the extensive duties assumed by the company in the contract. *See Tisdale,* 62 F.3d at 1371 (noting that "the extensive list of duties assumed by [the management company] ... illustrates the extent to which HUD relinquished its day-to-day duties ...").

In response to the Government's contentions, Golden Feather identifies only two powers retained by HUD in support of its argument that HUD has the power to control the detailed physical performance

of the contractor. The mere fact, however, that the government retains some limited oversight power is not enough to deem Golden Feather an "employee" of the government. "The government can require compliance with federal standards and contract specifications without being deemed to have day-to-day control." *Crippen v. Nelson Realty,* 572 F.Supp. 87, 88 (E.D.N.Y.1983)(holding that a management company hired by HUD was an independent contractor); *see also United v. Orleans,* 425 U.S. 807, 816, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) ("[B]y contract, the Government may fix specific and precise conditions to implement federal objectives . . . . [such] regulations do not convert the acts of entrepreneurs . . . into federal governmental acts.")

First, HUD had the power to "restrict assignment of any individual as an employee under the subcontract which is identified as a potential threat to the . . . mission of HUD or its staff." This power is not detailed control over the detailed physical performance of the contractor, simply limited oversight. Golden Feather was in charge of routine hiring and supervision of employees. HUD delegated the power to "recruit, hire, train and supervise qualified employees" and "to provide all facilities, materials, supplies, equipment, labor and services required to successfully manage the property." Gov't. Exhibit "B" at C–3, C–10.

Second, HUD retained the power to authorize repairs if the house is damaged due to "fire, flood, earthquake, tornado, hurricane or other natural disaster." Retaining the power to authorize repairs in the uncommon event of a natural disaster cannot

properly be characterized as control of the detailed physical performance of the contractor. *See Tisdale,* 62 F.3d at 1371 (holding that the power to authorize repairs over $1000 "cannot be characterized as 'day-to-day' duties"). Therefore, neither of the government's retained powers cited by Golden Feather transform its actions from that of an independent contractor to an employee.

Thus, Golden Feather is an independent contractor.

**2. The Scope of the Contract**

■ Golden Feather, however, argues the independent contractor exception does not apply in this instance because the HUD management contract did not assign Golden Feather the responsibility to ensure that the stairs would not collapse. The court, however, concurs with the other courts in this district that have examined HUD management contracts and finds that Golden Feather was responsible for maintaining the property in a safe condition. *See Balkonis v. United States,* 2002 WL 32348285, *3 (E.D.Pa. Aug.14, 2002)(holding that under the terms of a HUD management contract, the management company "was responsible for preventing and correcting any dangerous conditions on the property"); *Brimfield v. United States Dept. of Housing and Urban Development,* No. CIV. A. 02–3684, 2002 WL 31513375, *3 (E.D.Pa. Oct. 17, 2002)(finding that under the terms of the HUD management contract, the management company was responsible for the removal of any safety hazards as of the effective date of the contract, including a loose brick).[1] The contract required Gold-

---

1. Golden Feather relies primarily on two district court cases to argue that the contract did not delegate the duty of ensuring that the steps were maintained in a safe condition. In these two cases, the district court found that the janitorial firms hired by the United States were not independent contractors in charge of cleaning up spills which injured the plaintiffs. *See Dugan v. Coastal Industries, Inc.,* 96 F.Supp.2d 481, 484 (E.D.Pa.2000)(Lowell A.

en Feather to routinely inspect the property and take all actions necessary to preserve, protect and maintain each property in a presentable condition at all times, including but not limited to the "[c]orrection of ANY condition that presents a health or safety hazard to the public or to the property within 24 hours of discovery." Gov't Exhibit "B" at C–7. Moreover, the contract mandated that "Contractor's actions shall be timely so as to eliminate any hazardous conditions; to preserve and protect the property, to maintain properties in a presentable condition at all times and to enable timely marketing and sales." *Id.* at C–5. Furthermore, "[t]he Contractor must in any event maintain each property in such a way as to prevent any deterioration in condition or value to the property between the time that it assigned the property and thee time it conveys it to the purchaser." *Id.* at C–2. "This would include any repair necessitated by the proximate omission to properly inspect preserve, protect or maintain the property." *Id.* at C–7. These provisions clearly delineate Golden Feather's responsibility to discover and repair hazardous conditions. *Id.* Thus, Golden Feather was an independent contractor responsible for preventing and correcting dangerous conditions, such as ensuring that the stairs would not collapse when being presented to a prospective buyer of the house.

Reed, Jr., S.J); *Spotts v. United States,* No. CIV.A. 02–792, 2002 WL 1197136 (E.D.Pa. May 21, 2002)(Lowell A. Reed, Jr., S.J). These cases, however, are distinguishable from the case at hand. In describing its rationale for why the court felt the independent contractor exception could not be found to exist in *Dugan,* the District Court noted that "that because the contract in *Dugan* had placed the responsibility with the government for identifying and notifying the contractor of the need for 'emergency services' and 'special cleaning duties' such as cleaning spills, the

Therefore, the United States cannot be held liable for the actions of Golden Feather and the claims against the United States must be dismissed from this action. An appropriate Order follows.

### ORDER

**AND NOW,** this 26th day of April, 2006, upon consideration of the Renewed Motion to Dismiss or, Alternatively, for Summary Judgment of the United States, and the response thereto, it is hereby **ORDERED** that said Motion is **GRANTED.**

daily responsibility for inspecting for and supervising the cleaning of spills and wet spots in the facility lay with the government." *Spotts v. United States,* 2002 WL 1197136 (E.D.Pa. May 21, 2002)(Lowell A. Reed, Jr., S.J). Likewise, in *Spotts* the court noted that "the responsibility thereby lay with the government to discover any spills and to extend a service call to the contractor to ensure their removal." *Id.* at *2. No comparable responsibility has been placed with HUD in this case to inspect the stairs to discover any problems.